IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re EBC I, INC., f/k/a ETOYS, INC.<br><br>        Reorganized<br>        Debtor, | Chapter 11<br>Case No. 01-00706 (MFW) |
| EBC I, INC., f/k/a ETOYS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICA ONLINE, INC.,<br><br>        Defendant. | Adv. Proc. No. 03-50003 (MFW) |

**MEMORANDUM OF EBC I, INC. IN
OPPOSITION TO THE MOTION FOR
LEAVE TO APPEAL OF AMERICA ONLINE, INC.**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Richard D. Allen (#469)
Gregory W. Werkheiser (#3553)
Thomas W. Briggs, Jr. (#4076)
Margaret S. Juliano (#4722)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for EBC I, Inc.
Debtor and Debtor-in-Possession.*

January 5, 2007

<u>TABLE OF CONTENTS</u>

|  | <u>Page</u> |
|---|---|
| TABLE OF CITATIONS | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF THE FACTS AND OF THE NATURE AND STAGE OF THE PROCEEDING | 4 |
| A.    Relevant Facts | 4 |
| B.    Proceedings Before The Bankruptcy Court | 6 |
| ARGUMENT | 13 |
| AOL'S MOTION MUST BE DENIED BECAUSE AOL CANNOT SATISFY THE REQUIREMENTS FOR AN INTERLOCUTORY APPEAL. | 13 |
| A.    The Bankruptcy Court's Grant Of Partial Summary Judgment To eToys Does Not Involve A Controlling Question Of Law. | 14 |
| B.    The Bankruptcy Court's Ruling Is Not One Over Which There Is Substantial Ground For Difference Of Opinion. | 20 |
| C.    An Interlocutory Appeal Will Not Materially Advance The Ultimate Termination Of The Litigation. | 24 |
| D.    AOL Ignores The Deleterious Effects Of Further Delay On eToys' Creditors And Stakeholders. | 27 |
| CONCLUSION | 29 |

## TABLE OF CITATIONS

Page(s)

Cases

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*
219 F.3d 674 (7th Cir. 2000)                    14, 17

*Brown v. Mesirow Stein Real Estate, Inc.*
7 F. Supp. 2d 1004 (N.D. Ill. 1998)             20

*Butner v. United States*
440 U.S. 48 (1979)                              22

*Cal. Pub. Empl. Retir. Sys. v. Worldcom, Inc.*
368 F.3d 86 (2d Cir. 2004)                      16

*Coopers & Lybrand v. Livesay*
437 U.S. 463 (1978)                             14

*Dal-Tile Int'l, Inc. v. Color Tile, Inc.*
203 B.R. 554 (D. Del. 1996)                     13

*DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.*
434 F. Supp. 2d 445 (S.D. Tex. 2006)            26

*Enron Corp. v. Springfield Assoc., L.L.C.*
*(In re Enron Corp.)*
No. 01-16034, 2006 WL 2548592 (S.D.N.Y.
Sept. 5, 2006)                                  16, 27

*ePlus, Inc. v. Katz (In re Metiom, Inc.)*
318 B.R. 263 (S.D.N.Y. 2004)                    28

*FDIC v. Parkway Exec. Office Ctr.*
Nos. Civ. A. 96-121, 96-122, 1997 WL
611674 (E.D. Pa. Sept. 24, 1997)                25

*First Am. Bank of N.Y. v. Century Glove, Inc.*
64 B.R. 958 (D. Del. 1986)                      14

*Flor v. Bot Fin. Corp.*
79 F.3d 281 (2d Cir. 1996)                      20

*G-I Holdings, Inc. v. Bennett (In re G-I*
*Holdings, Inc.)*
Civ. No. 02-3626 (WGB), 2005 WL 3370020
(D.N.J. Dec. 9, 2005)                           25

TABLE OF CITATIONS (continued)

Page(s)

*Hulmes v. Honda Motor Co.*
    936 F. Supp. 195 (D.N.J. 1996)                          25

*In re Chaves*
    335 S.E.2d 97 (Va. 1995)                                22

*In re Delaware and Hudson Ry. Co.,*
    96 B.R. 469 (D. Del.1989)
    *aff'd,* 884 F.2d 1383 (3d Cir. 1989)                  13, 15

*In re Edison Bros. Stores, Inc.*
    No. Civ. A. 96-177-SLR, 1996 WL 363806
    (D. Del. June 27, 1996)                                 28

*In re Jackson Brook Inst., Inc.*
    280 B.R. 1 (D. Me. 2002)                                16

*In re Permian Producers Drilling, Inc.*
    263 B.R. 510 (W.D. Tex. 2000)                           28

*In re The Charter Co.*
    72 B.R. 70 (Bankr. M.D. Fla. 1987)                      28

*In re Thompson*
    186 B.R.301 (Bankr. N.D.G. 1995)                        21

*In re VVF Comm. Corp.*
    41 B.R. 546 (Bankr. D.D.C. 1984)                        28

*Katz v. Carte Blanche Corp.*
    496 F.2d 747 (3d Cir. 1974)                            14, 15

*Klinghoffer v. S.N.C. Achille Lauro Ed*
    *Altri-Gestione Motonave Achille Lauro*
    *in Amminstrazione Straordinaria*
    921 F.2d 21 (2d Cir. 1991)                             14, 23

*Kraus v. Bd. of County Road Comm'rs*
    364 F.2d 919 (6th Cir. 1966)                            26

*McFarlin v. Conseco Svcs., LLC*
    381 F.3d 1251 (11th Cir. 2004)                       14, 17, 25

TABLE OF CITATIONS (continued)

Page(s)

*Mellon Bank, N.A. v. The Official Comm. Of
Unsecured Creditors of R.M.L., Inc.
(In re R.M.L., Inc.)*
92 F.3d at 139 (3d Cir. 1996)                     22

*Metro Water & Coffee Service v. Rochester
City Baseball Inc.*
157 B.R. 742 (Bankr. W.D.N.Y 1993)               21

*Natale v. French & Pickering Creeks
Conservation Tr., Inc. (In re Natale)*
295 F.3d 375 (3d Cir. 2002)                       28

*Otero v. Vito*
No. 5:04-CV-211 (DF), 2006 WL 1285032
(M.D. Ga. May 10, 2006)                           20

*Pension Transfer Corp. v. Beneficiaries
under the Third Amendment To Fruehauf
Trailer Corp. Retirement Plan No. 003
(In re Fruehauf Trailer Corp.),*
444 F.3d 203 (3d Cir. 2006)                       22

*Quigley Co., Inc. v. A.C. Coleman (In re
Quigley Co., Inc.)*
323 B.R. 70 (S.D.N.Y. 2005)                       16

*Singh v. George Washington Univ.*
383 F. Supp. 2d 99 (D.D.C. 2005)                  26

*U.S. v. Bear Marine Servs.*
696 F.2d 1117 (5th Cir. 1983)                     26

*Walker v. Eastern Air Lines, Inc.*
785 F. Supp. 1168 (S.D.N.Y. 1992)                 20

Statutes

28 U.S.C. § 1292                          1, 13, 15, 17

28 U.S.C. § 158                               1, 13, 28

<u>PRELIMINARY STATEMENT</u>

Plaintiff EBC I, Inc., f/k/a eToys, Inc. ("eToys" or the "Debtor") files this memorandum in opposition to the Motion For Leave To Appeal, dated December 18, 2006 (Adv. D.I. 77) (the "Motion") of Defendant America Online, Inc., now known as AOL LLC ("AOL"). AOL seeks leave pursuant to 28 U.S.C. § 158(a)(3) to appeal a portion of the Opinion (Adv. D.I. 72) (the "Opinion") and Order (Adv. D.I. 73) of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") which entered judgment in favor of eToys with respect to liability (but not damages) on one count of a multi-count complaint asserting claims to avoid and recover fraudulent transfers from AOL under section 548 of title 11 of the United States Code (the "Bankruptcy Code") and related state law claims.

An interlocutory appeal is appropriate only when the movant establishes the presence of three elements: (1) the order sought to be reviewed "involves a controlling question of law," (2) "there is substantial ground for difference of opinion," on that question of law and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Not even one of those elements is present here.

First, the decision of the Bankruptcy Court did not involve a controlling question of law for several reasons. The issue resolved is not controlling as to the litigation, because eToys has asserted separate grounds for recovery in other counts of its complaint which remain pending and are ready for trial. Moreover, the decision is not even controlling as to Count I of the Complaint. While the Bankruptcy Court found that the termination of the agreement between eToys and AOL constituted a fraudulent transfer under section 548 of the Bankruptcy Code – the issue AOL seeks to appeal – the Court separately found that the termination of the agreement was also invalid under section 541(c)(1) of the Bankruptcy Code, providing a separate basis for granting summary judgment to eToys.

In addition, the ruling of the Bankruptcy Court did not involve, as AOL claims, "a pure question of law" (Motion at 1). Instead, the Bankruptcy Court's decision rested on the application of the law to the specific facts of this case. The decision also did not "announce a new principle of law" as AOL claims (Motion at 3). Instead, the Bankruptcy Court followed a long line of cases, cited in the Opinion, in which courts have found that the forfeiture of accrued contract rights by reason of

termination of an agreement constitutes a fraudulent transfer under section 548.

Second, the issue decided by the Bankruptcy Court is not one as to which there is a substantial ground for a difference of opinion. The cases upon which AOL relies to suggest a split of authority are readily distinguishable, as the Bankruptcy Court found, because they did not involve accrued contract rights having value. Moreover, controlling Virginia and Third Circuit law confirm that contract rights are property of the debtor which can be the subject of a fraudulent transfer claim under section 548 of the Bankruptcy Code, as the Bankruptcy Court found.

Third, granting leave to appeal will not materially advance the termination of the litigation, but instead will prolong and delay the final resolution of the case. After four years of litigation, the only issues that remain for resolution are the value of the services that AOL failed to deliver by reason of its wrongful termination of the agreement and the right of eToys to recover on its claim that a different event – the amendment of the contract between the parties three months before termination - constituted a fraudulent transfer. Those issues can be quickly tried and decided, at which point all proceedings before the Bankruptcy Court in this case will

4.

be concluded. Even a successful interlocutory appeal will not eliminate the need for a trial or significantly affect the scope of the trial. However, allowing an interlocutory appeal will delay substantially the final resolution of this case, which has now been pending four years.

STATEMENT OF THE FACTS AND OF THE
NATURE AND STAGE OF THE PROCEEDING

A.    Relevant Facts

In August 1999, eToys and AOL entered into a contract under which AOL committed to provide for three years various types of online advertisements that would appear on computer screens when people logged on to AOL's internet service. eToys agreed to pay $18 million to AOL over the three year period for such services. During the first year of the agreement eToys paid $7.5 million to AOL (Op. at 2).

Near the end of the first year of the contract, a dispute arose between the parties because AOL had delivered far fewer advertisements than it was obligated to deliver. As the Bankruptcy Court found, "AOL failed to perform its obligations, providing less than $2.4 million in advertisements" in the first year (Op. at 2). The under delivery by AOL breached the agreement, and imposed on AOL

certain penalties. In order to resolve those disputes, the parties agreed to amend the agreement.

The amendment was entered on November 15, 2000 and had three material terms: eToys agreed to make one additional payment in the amount of $750,000; an attachment listed the specific advertisements to be delivered by AOL through August 2002 and the time of the delivery; and eToys waived its claim that AOL had breached the agreement. The effect of these amendments was to change the agreement from one in which periodic payments were made as services were rendered to one in which eToys as of November 15, 2000 had paid in advance for services to be provided over the next two years. As the Court found, the parties valued the services which AOL was to provide at approximately $6 million (Op. at 2), which was essentially the difference between the amount already paid by eToys and the value of the services delivered in the first year.

After the amendment was signed, the financial condition of eToys rapidly deteriorated and it was undisputed that by February of 2001 eToys was insolvent (Op. at 7). Based on eToys' public announcement in late February 2001 that its liabilities exceeded its assets and that it intended to seek bankruptcy protection, AOL purported to terminate the agreement pursuant to a

provision which allowed termination in the event a party became or was declared to be insolvent or bankrupt. However, even though eToys had paid in advance for services to be delivered by AOL through August 2002, AOL failed to refund amounts paid by eToys for the services which it had not yet delivered. The termination of the agreement freed up advertising space which AOL was then able to sell to other customers.

> B.    Proceedings Before The Bankruptcy
>       Court

On March 7, 2001, eToys and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") each filed voluntary petitions with the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

By Order, dated November 1, 2002 (Bankr. D.I. 1385), the Bankruptcy Court confirmed the First Amended Consolidated Liquidating Plan Of Reorganization of EBC I, Inc. f/k/a eToys, Inc. And Its Affiliated Debtors And Debtors-In-Possession (D.I. 1142) (the "Plan"). The Plan became effective by its terms on November 5, 2002.

On January 3, 2003, eToys commenced this adversary proceeding against AOL. eToys' complaint (Adv. D.I. 1) (the "Complaint") alleged that both the amendment of the agreement on November 15, 2000 and the purported

7.

termination of the agreement on February 28, 2001 were
fraudulent transfers under section 548 of the Bankruptcy
Code and under Virginia law, and gave rise to other state
law claims.

On February 13, 2003, AOL filed a motion to
dismiss the Complaint (Adv. D.I. 3) in which it raised,
among other issues, the issue which it now asks the
District Court to review by means of an interlocutory
appeal. After briefing and argument, the Bankruptcy Court,
by Order dated October 10, 2003 (Adv. D.I. 24), denied that
motion as to all claims except Count V, asserting unjust
enrichment.

Fact and expert discovery was thereafter
completed. Pursuant to a stipulated scheduling order,
dated March 25, 2004 (Adv. D.I. 44) (the "Second Amended
Scheduling Order"), a one-day trial was scheduled for July
22, 2004.[1]

On May 14, 2004, the last day for the filing of
dispositive motions under the Second Amended Scheduling

---

[1]  The Second Amended Scheduling Order was entered after all
non-expert fact discovery was to have been initiated by
the parties and was the last in a series of three
stipulated scheduling orders governing pre-trial
proceedings in this action (Adv. D.I. 12, 26 & 44). The
prior scheduling orders also contemplated one-day trials.

Order, AOL moved (Adv. D.I. 49) for summary judgment on all claims asserted by eToys.  eToys moved (Adv. D.I. 46) for partial summary judgment on its claim that AOL's purported termination of the contract, coupled with AOL's retention of advance payments made by eToys for services never delivered, constituted a fraudulent transfer as a matter of law under section 548 of the Bankruptcy Code.   After further briefing, both motions were submitted for the Bankruptcy Court's consideration.

In the Opinion issued December 7, 2006, the Bankruptcy Court granted AOL's motion for summary judgment on claims of breach of contract (Count IV) and unjust enrichment (Count V), noting that it had previously dismissed the unjust enrichment claim and that eToys did not oppose dismissal of the contract claim or claims based on contract payments (Op. at 3).  With respect to AOL's motion seeking summary judgment on the fraudulent transfer claims arising from the amendment of the agreement in November 2000, the Bankruptcy Court did not grant summary judgment.  As the Bankruptcy Court noted, AOL's motion with respect to those claims was premised on its assertion that eToys was solvent until December 2000, and, thus could not satisfy one element of a fraudulent transfer claim; however, the Bankruptcy Court found "that there is a

genuine issue of material fact whether the debtor was solvent on November 15, 2000," when the amendment was signed (Op. at 6 - 7). This claim of eToys, thus, remains pending and is ready for trial.

With respect to eToys' claim that the termination of the agreement in February 2001 was a fraudulent transfer, the Bankruptcy Court granted eToys' motion for summary judgment and denied the motion of AOL for summary judgment. The Bankruptcy Court found that "termination of the contract by AOL resulted in a transfer of property of the Debtor, namely the advertising services for which the Debtor had prepaid" (Op. at 10). Contrary to AOL's assertion that the "decision represents a dramatic and unprecedented expansion of the law of fraudulent conveyance" (Motion at 1), the Bankruptcy Court's decision was consistent with numerous decisions of other bankruptcy courts (cited in the Opinion) which had recognized that, even when a contract is properly terminated pursuant to its terms, the termination constitutes a fraudulent transfer if the debtor had acquired rights under the contract which were taken without compensation as a result of the termination (Op. at 8-9). The Bankruptcy Court found, conversely, that the cases relied on by AOL were

10.

distinguishable because they did not involve prepaid contracts in which rights had accrued (Op. at 11).

Importantly, the Bankruptcy Court separately found that AOL's termination of the agreement was insufficient to deprive eToys of its rights under the contract by virtue of section 541(c)(1) of the Bankruptcy Code. AOL had terminated the agreement based on a provision which allowed termination in the event eToys became insolvent or bankrupt. As the Bankruptcy Court noted, section 541 provides, in relevant part, that an interest of the debtor becomes property of the estate notwithstanding any provision in an agreement that purports to give a right of forfeiture or termination based on the insolvency of the debtor (Op. at 15-16). Accordingly, the Bankruptcy Court found that "by virtue of section 541(c)(1) the Debtor's interest in the contract became property of the estate notwithstanding AOL's purported termination under Section 5.6 of the Contract." (Op. at 16-17). This provided yet another basis for the Bankruptcy Court's granting of summary judgment to eToys on Count I.

Lastly, the Bankruptcy Court found that the remaining issue to be resolved at a hearing on Count I is the value of the services that AOL was obligated to provide but did not provide after the amendment of the contract,

since it was undisputed that some portion of the $6 million in advertisements to be provided through August 2002 had been provided in the time period between the amendment of the agreement and the termination of the agreement by AOL. Contrary to AOL's claim that this will involve a "complex and potentially lengthy" proceeding (Motion at 13), it will simply involve a comparison of the specified services AOL was to provide under the amendment and schedules (produced in discovery) of the services actually provided before AOL terminated the agreement.

Accordingly, after four years of litigation, the remaining proceedings in the Bankruptcy Court are limited to a trial or evidentiary hearing on (1) the damages to be awarded to eToys based on the termination of the agreement, and (2) trial of the claim of eToys that the amendment of the agreement separately constituted a fraudulent transfer under section 548 and Virginia state law.[2]    eToys anticipates that those issues can be tried in no more than three days, and probably less.

---

[2]  Any recovery by eToys on this claim would overlap and include its recovery on the claim on which it has already prevailed (plus other damages).  Thus, as a practical matter, trial of this claim may be limited to the issue of whether eToys was insolvent on November 15, 2000.

12.

On December 18, 2006, AOL filed the Motion and a notice of appeal (Adv. D.I. 75) from the Opinion and Order, seeking interlocutory review in the United States District Court for the District of Delaware (the "District Court" or "this Court") of that portion of the Opinion and Order which entered judgment for eToys as to liability on Count I of the Complaint.

This is eToys' memorandum of law in opposition to the Motion.[3]

---

[3]  By Order, dated December 21, 2006 (Adv. D.I. 82), the Bankruptcy Court granted eToys' unopposed motion (Adv. D.I. 80) to extend its deadline to answer in opposition to the Motion through and including January 5, 2007.

<u>ARGUMENT</u>

AOL'S MOTION MUST BE DENIED BECAUSE AOL
CANNOT SATISFY THE REQUIREMENTS FOR AN
INTERLOCUTORY APPEAL.

AOL's request to take an interlocutory appeal is made pursuant to 28 U.S.C. § 158(a)(3). However, "[b]ecause section 158(a) does not provide criteria for determining when leave to appeal should be granted, this Court has held that the standards set forth in 28 U.S.C. § 1292(b) governing interlocutory appeals from district courts to United States courts of appeals shall apply." *Dal-Tile Int'l, Inc. v. Color Tile, Inc.,* 203 B.R. 554, 557 (D. Del. 1996); *see also In re Delaware and Hudson Ry. Co.,* 96 B.R. 469, 472 (D. Del. 1989), *aff'd,* 884 F.2d 1383 (3d Cir. 1989).

Under section 1292(b), an interlocutory appeal may only be allowed when the order "(1) involves a controlling question of law upon which there is (2) substantial grounds for difference of opinion and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Delaware and Hudson,* 96 B.R. at 473. It is the appellant's burden to "establish that 'exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of a final judgment.'" *First Am. Bank of*

14.

*N.Y. v. Century Glove, Inc.,* 64 B.R. 958, 961 (D. Del. 1986) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978)). "Unless *all* these criteria are satisfied, the district court may not and should not certify [an] order . . . for an immediate appeal under section 1292(b)." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,* 219 F.3d 674, 676 (7th Cir. 2000).[4]

> A.    The Bankruptcy Court's Grant Of Partial Summary Judgment To eToys Does Not Involve A Controlling Question Of Law.

The phrase "controlling question of law" as used in section 1292(b) embodies two requirements. First, the question to be certified must be "controlling" in the context of the litigation. Second, the question must be a "pure" question of law. Neither requirement is met here.

---

[4] Even when all of these factors are present, the Court has discretion to deny an interlocutory appeal "for entirely unrelated reasons such as the state of the appellate docket or the desire to have a fuller record before considering the disputed legal issue." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir. 1974); *see also, e.g., McFarlin v. Conseco Svcs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004); *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amminstrazione Straordinaria,* 921 F.2d 21, 24 (2d Cir. 1991).

       1.    *No "Controlling" Question Of Law Is Present.*

In the Third Circuit, a question of law is not "controlling" unless it, at minimum, is one that would be reversible error on final appeal. *See, e.g., Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir. 1974); *Delaware and Hudson Ry.,* 96 B.R. at 473. In determining whether the question for which certification is requested is controlling, the key question is:

> whether it truly implicates the policies favoring interlocutory appeal. The determination of what orders are properly reviewable under § 1292(b) must be made by a practical application of those policies, not by a mechanical application of labels such as 'discretionary' or 'nondiscretionary.' Those policies, both before and since the enactment of § 1292 (b) have included the avoidance of harm to a party *pendente lite* from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense.

*Katz,* 496 F.2d at 756. As noted in the cases cited by AOL, the "question must be 'controlling' in the sense that reversal of the bankruptcy court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome." *Enron Corp. v. Springfield Assoc., L.L.C. (In re*

*Enron Corp.),* No. 01-16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006).

A question of law is not "controlling" where it addresses only one of several claims between the parties arising out of the same nexus of facts and the non-appealing party "could be successful on alternative grounds or asserted theories . . . ." *In re Jackson Brook Inst., Inc.,* 280 B.R. 1, 5 (D. Me. 2002); *see also Cal. Pub. Empl. Retir. Sys. v. Worldcom, Inc.,* 368 F.3d 86, 95 (2d Cir. 2004); *Quigley Co., Inc. v. A.C. Coleman (In re Quigley Co., Inc.),* 323 B.R. 70, 78 (S.D.N.Y. 2005).

Under these standards, the decision of the Bankruptcy Court on Count I is not "controlling" in any sense. eToys has asserted separate grounds for recovery under section 548 of the Bankruptcy Code and under Virginia law arising from the amendment of the agreement, and those claims remain to be tried. The issue which AOL seeks to appeal has no bearing on those claims.

Moreover, the issue sought to be appealed is not even controlling as to Count I of the complaint. The Bankruptcy Court also found that the termination of the agreement by AOL was void under section 541(c)(1) of the Code and therefore could not properly extinguish eToys' contractual rights. Thus, contrary to AOL's assertion

(Motion at 8), even a reversal of the decision of the Bankruptcy Court on the issue sought to be appealed would not control the resolution of Count I, and eToys would be entitled to recover the value of its contract rights under section 541.

> 2.  *The Bankruptcy Court's Ruling Does Not Involve A "Pure" Question Of Law.*

The issue resolved by the Bankruptcy Court, besides not being controlling, was also not a question of law. The phrase "question of law" as used in section 1292(b) refers "to a 'pure' question of law rather than merely to an issue that might be free from a factual contest." *Ahrenholz,* 219 F.3d at 676-77. This is because section 1292(b) is limited in application to those discrete issues that the appellate courts can "decide quickly and cleanly without having to study the record . . . ." *Id.* Therefore, "[t]he antithesis of a proper § 1292(b) appeal is one that turns on whether the . . . court properly applied settled law to the facts or evidence of a particular case." *McFarlin,* 381 F.3d at 1259.

AOL seeks review of "whether-in the absence of any finding that the debtor received less than full consideration when it *entered into* the contract granting the service provider the right to terminate-the service

provider's *exercise* of its previously granted contractual right to terminate the contract can constitute a fraudulent conveyance under section 548 of the Bankruptcy Code." (Motion, at 4) (emphasis in original). While AOL characterizes this as a "pure question of law" (Motion at 1), it is not -- as the cases cited by the Bankruptcy Court show, whether there has been a fraudulent conveyance turns on both the specific facts and the terms of the contract and the application of section 548 to those facts.

The Bankruptcy Court's ruling was based on its conclusion that "in this case, the Debtor had not materially breached the Contract," (Op. at 12), instead had fully performed by paying in advance for $6 million in services, and that eToys had not received reasonably equivalent value to the extent that the $8.25 million prepaid by eToys exceeded the value of the services provided by AOL[5] (Op. at 20).

Both the decision of the Bankruptcy Court and the decisions cited in the Opinion, show that the issue of whether a termination of a contract constitutes a fraudulent transfer turns on the particular facts

---

[5] The Bankruptcy Court expressly provided that its Opinion constitutes "findings of fact" pursuant Rule 7052 of the Federal Rules of Bankruptcy Procedure. (Op. at 1 n.1).

presented, and is not an abstract question of law. In those cases in which Bankruptcy Courts have found that the termination of a contract pursuant to an express right to terminate nonetheless constituted a fraudulent transfer, there had been partial or complete performance by the debtor and the accrual of valuable contract rights based on such performance which were lost as a result of the termination (Op. at 8-9). Conversely, the cases relied on by AOL all involved a situation in which a debtor was not claiming an existing accrued right under the contract, but instead was claiming the loss of the future value to it of continuing to operate under the contract; in those cases, the courts held that because the debtor had materially breached the contract, any right to future performance was lost because of the failure of a condition precedent.

The decision of the Bankruptcy Court, like that of other courts in the cases cited, involved the application of section 548 to the specific facts of the contract and of the parties' performance. The decision did not involve a pure question of law and, for this reason also, may not be reviewed by interlocutory appeal.

B.   The Bankruptcy Court's Ruling Is
Not One Over Which There Is
Substantial Ground For Difference
Of Opinion.

The decision of the Bankruptcy Court also did not involve an issue on which there truly is a substantial ground for dispute. "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor v. Bot Fin. Corp.,* 79 F.3d 281, 284 (2d Cir. 1996); *see also Otero v. Vito,* No. 5:04-CV-211 (DF), 2006 WL 1285032, at *2 (M.D. Ga. May 10, 2006)[6] (finding no substantial ground for difference of opinion where, despite absence of controlling law in the jurisdiction, there was a substantial body of law elsewhere).   Conversely, where a controlling court of appeals has addressed the issue, there is no substantial ground for difference of opinion despite authority to the contrary. *See, e.g., Brown v. Mesirow Stein Real Estate, Inc.,* 7 F. Supp. 2d 1004, 1008 (N.D. Ill. 1998); *Walker v. Eastern Air Lines, Inc.,* 785 F. Supp. 1168, 1174 (S.D.N.Y. 1992).

---

[6]   A compilation of unreported decisions is annexed hereto as Exhibit A.

AOL argues that the "Bankruptcy Court's decision represents a dramatic and unprecedented expansion of the law of fraudulent conveyance" and that the Bankruptcy Court's decision "is in direct conflict with a substantial body of case law." (Motion at 1 & 8). However, the cases relied on by AOL are, as the Bankruptcy Court found, readily distinguishable because they did not involve pre-paid contracts in which existing rights had accrued (Op. at 11). The Bankruptcy Court also found that, unlike the cases upon which AOL relies, here eToys had not materially breached the contract (*Id.* at 12).

AOL also asserts that the Bankruptcy Court's decision "relied on a series of cases that all involved contractual rights to *interests in real property*..." and that no case has ever found that the termination of some other type of contract was a transfer under section 548. (*Id.* at 9). To the contrary, several of the cases cited by the Bankruptcy Court did not involve contracts for real property.[7] And while many of the cases upon which the Bankruptcy Court relied involved real estate contracts, AOL

---

[7] *In re Thompson*, 186 B.R.301 (Bankr. N.D.G. 1995) and *Metro Water & Coffee Service v. Rochester City Baseball Inc.* 157 B.R. 742 (Bankr. W.D.N.Y 1993) cited by the Court involved franchise agreements.

offers no explanation as to why that makes a principled difference. The Bankruptcy Court found that "contrary to AOL's assertion, Virginia law does recognize contract rights as property rights." (Op. at 13, citing *In re Chaves,* 335 S.E.2d 97, 103 (Va. 1995), and *Worrie v. Boze,* 95 S.E.2d 192, 196 (Va. 1956)).[8]

AOL's attempt to suggest that there is a substantial ground for difference as to what constitutes property recoverable under section 548 of the Bankruptcy Code is further refuted by the recent Third Circuit decision in *Pension Transfer Corp. v. Beneficiaries under the Third Amendment To Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.),* 444 F.3d 203, 211 (3d Cir. 2006), noting that "[i]t is . . . well established that 'the mere opportunity to receive an economic benefit in the future' is property with value under the Bankruptcy Code." (quoting *Mellon Bank, N.A. v. The Official Comm. Of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)* 92 F.3d at 139, 148 (3d Cir. 1996)). Applying this principle, the Court held that the debtor's

---

[8] State law governs the determination of property rights in a debtor's assets. *See Butner v. United States,* 440 U.S. 48, 54 (1979). It is undisputed that the contract is governed by Virginia law.

potential future right to recover a surplus under the terms of its pension plan agreement was a transferable property interest under section 548 of the Bankruptcy Code. *Fruehauf,* 444 F.3d at 211.  This binding Circuit precedent interpreting "property" broadly forecloses any argument by AOL that the Bankruptcy Court erred in finding that eToys had a property interest in its rights under the contract.

Finally, the so-called "massive implications for future bankruptcy cases" about which AOL rails in its Motion simply do not exist (Motion, at 10).  The Bankruptcy Court correctly recognized that its decision applies only to the rare case involving "a contract whose termination resulted in the loss of valuable property rights of the debtor, such as entitlement to services for which it had paid in advance..." (Op. at 18).  But even if the Bankruptcy Court's decision had some broader implication, that is not relevant to the question of whether to certify an interlocutory appeal.  *See Klinghoffer,* 921 F.2d at 24 (rejecting the importance of a question to other suits as a consideration governing whether an interlocutory appeal should be certified).

Because there is no substantial ground for a difference of opinion on the issue resolved by the

Bankruptcy Court's decision, this prerequisite for an interlocutory appeal also is not present.

> C. An Interlocutory Appeal Will Not Materially Advance The Ultimate Termination Of The Litigation.

This case has been pending for four years. Fact and expert discovery is complete, the Bankruptcy Court's decision has narrowed the claims, and those claims are ready to be tried. Even a successful interlocutory appeal by AOL would not obviate the need for trial because Counts II and III of the Complaint have survived summary judgment and are ready to be tried. Nor would it even change in any significant way the issues for trial. With respect to Count I, as to which AOL seeks to take an appeal, the only remaining issue is "what value in services AOL provided to the Debtor after the amendment to the Contract" (Op. at 21). However, that issue will have to be tried in any event in light of the Court's alternative finding that the termination of the agreement violated section 541 of the Code.

Moreover, trial of the damages issue on Count I will not involve a "complex and potentially lengthy" proceeding as AOL claims, but will simply involve a comparison of the specified services AOL was to provide

under the amendment and schedules of the services actually provided before AOL terminated the agreement.

A necessary prerequisite for an interlocutory appeal is that it will "serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin,* 381 F.3d at 1259. Where discovery is complete and trial is imminent, as it is here, interlocutory review should not be allowed. *See, e.g., G-I Holdings, Inc. v. Bennett (In re G-I Holdings, Inc.),* Civ. No. 02-3626 (WGB), 2005 WL 3370020, at *7 (D.N.J. Dec. 9, 2005); *Hulmes v. Honda Motor Co.,* 936 F. Supp. 195, 212 (D.N.J. 1996) ("[D]elay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial."); *FDIC v. Parkway Exec. Office Ctr.,* Nos. Civ. A. 96-121, 96-122, 1997 WL 611674, at *3 (E.D. Pa. Sept. 24, 1997) ("It has generally been recognized that where discovery is complete and a case is ready for trial, an interlocutory appeal can hardly advance the ultimate termination of the litigation.").

An interlocutory appeal is especially inappropriate when a trial is anticipated to be short and not particularly complex.[9] *See, e.g., U.S. v. Bear Marine*

---

[9]  Trial in this case is anticipated to be at most only a few days. Indeed, prior scheduling orders allowed only one day for trial.

*Servs.,* 696 F.2d 1117, 1120 (5th Cir. 1983) (denying interlocutory appeal where trial was likely to be short); *Kraus v. Bd. of County Road Comm'rs,* 364 F.2d 919, 922 (6th Cir. 1966) (interlocutory appeal not available for actions "that can be tried and disposed of on their merits in a few days"); *DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.,* 434 F. Supp. 2d 445, 461 (S.D. Tex. 2006) (interlocutory appeal denied when patent trial would last only 2-3 days); *Singh v. George Washington Univ.,* 383 F. Supp. 2d 99, 105 (D.D.C. 2005) (denying interlocutory appeal where court believed it would occupy just several days of the court's time).

AOL makes the nonsensical assertion that, because there is likely to be an appeal from a final decision of the Bankruptcy Court in any event, the delay in final resolution of the case by allowing an interlocutory appeal "would not be expected to be significant" (Motion at 16). To the contrary, proceedings in the Bankruptcy Court are close to final resolution and allowing an interlocutory appeal would delay final resolution for an extended period, and possibly several years should AOL attempt to pursue an appeal to the Third Circuit.

Allowing an interlocutory appeal by AOL will not materially advance the litigation and, instead, will prolong and delay the final resolution of this case.

Absent an appeal, this case can rapidly be concluded in the Bankruptcy Court. For this reason also, AOL's motion for an interlocutory appeal must be denied.

> D.   AOL Ignores The Deleterious Effects Of Further Delay On eToys' Creditors And Stakeholders.

Notwithstanding the well developed body of case law applying section 1292(b), AOL urges this Court to apply a relaxed standard in this case. (Motion at 15-16). In essence, AOL posits that because the disposition of this litigation has already been delayed nearly four years, the incremental harm to eToys' creditors and stakeholders should be substantially discounted so that it can pursue its appeal (*Id.*). This argument stands bankruptcy policy on its head, and is contradicted even by the authorities upon which AOL relies.

It is well accepted that the section 1292(b) standard "is to be strictly applied as interlocutory appeals from bankruptcy courts' decisions are 'disfavored' . . . ." *Enron Corp.,* 2006 WL 2548592, at *3. Indeed, "[d]espite the relaxed view of finality in the bankruptcy setting as a whole, the general antipathy toward piecemeal appeals still prevails in individual adversary actions." *Natale v. French & Pickering Creeks Conservation Tr., Inc.*

*(In re Natale),* 295 F.3d 375, 378-79 (3d Cir. 2002); *see also In re Edison Bros. Stores, Inc.,* No. Civ. A. 96-177-SLR, 1996 WL 363806, at *3 (D. Del. June 27, 1996) ("Although the concept of finality is accorded some measure of flexibility in the context of § 158(a)(1) appeals, apparently the same standard does not apply in the contest of § 158(a)(3) interlocutory appeals."). The "inefficient use of judicial resources is as objectionable in bankruptcy appeals as in other fields." *Natale,* 295 F.3d at 379.

The substantial delay already experienced in resolving this litigation and making distributions to eToys' creditors weighs substantially against allowing an interlocutory appeal. In the analogous context of whether to grant a stay pending appeal which would further delay creditor distributions, numerous courts have recognized the substantial harm to creditors that would result from delay. *See, e.g., ePlus, Inc. v. Katz (In re Metiom, Inc.),* 318 B.R. 263, 272 (S.D.N.Y. 2004); *In re Permian Producers Drilling, Inc.,* 263 B.R. 510 (W.D. Tex. 2000); *In re The Charter Co.,* 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987); *In re VVF Comm. Corp.,* 41 B.R. 546 (Bankr. D.D.C. 1984).

Furthermore, these bankruptcy cases are nearly complete. This litigation is one of only a few matters to be resolved before the cases can be closed, and the

Bankruptcy Court can be relieved of the burden of overseeing these bankruptcy cases.

CONCLUSION

An interlocutory appeal is appropriate only where three factors are present: a controlling issue of law, as to which there is a substantial difference of opinion, and the resolution of which will materially expedite the litigation. Not one of those factors is present here. Instead, after four years of litigation, the few remaining issues before the Bankruptcy Court are ready for a trial, after which either side will be free to appeal. For these reasons, AOL's motion for leave to take an interlocutory appeal should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Richard D. Allen (#469)
Gregory W. Werkheiser (#3553)
Thomas W. Briggs, Jr. (#4076)
Margaret S. Juliano (#4722)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
   Attorneys for EBC I, Inc.
   Debtor and Debtor-in-Possession

January 5, 2007

549989.7

# **EXHIBIT A**

Westlaw.

Not Reported in F.Supp.2d                                    Page 1

Not Reported in F.Supp.2d, 2005 WL 3370020 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

н
Briefs and Other Related Documents
In re G-I Holdings, Inc.D.N.J.,2005.Only the
Westlaw citation is currently available.
United States District Court,D. New Jersey.
In re: G-I HOLDINGS, INC. f/k/a Gaf Corporation,
Debtor.
G-I HOLDINGS, INC. f/k/a Gaf Corporation and
Building Materials Corporation of America,
Plaintiffs,
v.
Ruddles A. BENNET, Jr. et al., Defendants.
No. Civ. 02-3626(WGB).

Dec. 9, 2005.

Riker, Danzig, Scherer, Hyland & Perretti LLP, By:
Dennis J. O'Grady, Morristown, New Jersey, Weil,
Gotshal & Manges LLP, By: Martin J. Bienenstock,
Kathryn L. Turner, Ralph I. Miller, Debra L.
Goldstein, John B. Kinchen, New York, New York,
for Plaintiffs and Counter-Defendants.
Saiber Schlesinger Satz & Goldstein, LLC, By:
David R. Gross, Nancy A. Washington, Whitney R.
Chelnik, Newark, New Jersey, Keating, Muething &
Klekamp, P.L.L., By: Kevin E. Irwin, Michael L.
Scheier, Douglas Hensley, Cincinnati, Ohio, for the
Legal Representative of Present and Future Holders
of Asbestos-Related Demands.
Lowenstein Sandler, PC, By: John K. Sherwood,
Rose E. Ramsay, Roseland, New Jersey, Caplin &
Drysdale, Chartered, By: Elihu Inselbuch, New
York, New York, Caplin & Drysdale, Chartered,
By: Trevor W. Swett, Peter Van N. Lockwood,
Washington, DC, for the Official Committee of
Asbestos Claimants.

OPINION
BASSLER, Senior J.
*1 Plaintiffs, G-I Holding Inc. ("G-I"), a debtor in
bankruptcy proceedings, and its nonbankrupt
subsidiaries filed an adversary proceeding seeking a
declaration that the subsidiaries could not be held

liable for asbestos-related claims under successor
liability or alter ego theories. On July 6, 2005, this
Court dismissed the Legal Representative of Present
and Future Holders of Asbestos-Related Demands ("
Legal Representative") from the action finding that
his involuntary participation in the matter is not
statutorily authorized and would be an abuse of his
role. Plaintiffs bring the current motion requesting
the Court to direct entry of that order ("July 6 Order
") as final or, in the alternative, certify the order for
interlocutory appeal.

The Court properly exercises jurisdiction over this
matter pursuant to 28 U.S.C. §§ 1334(b) and (e).
Venue is proper in this district pursuant to 28
U.S.C. § 1409(a).

For the reasons set forth below, the Court denies
Plaintiffs' motion.

I. Background

Plaintiff G-I, the successor to GAF Corporation, is a
holding company, which filed for Chapter 11
bankruptcy on January 5, 2001. (First Amended
Complaint ("First Am. Compl.") ¶¶ 2,5). GAF
was a building materials company that produced
asbestos products. GAF has been named in 500,000
asbestos lawsuits and G-I remains liable for
approximately 150,000 claims that have been filed
and for unknown numbers of asbestos claims that
will be filed in the future. Due to the massive
liability it faced, G-I claims that it was forced to file
for bankruptcy. (Id. ¶ 4).

G-I is the parent company of Plaintiffs Building
Materials Corporation of America, Building
Materials Investment Corporation and Building
Materials Manufacturing Corporation (collectively "
BMCA"). BMCA is a leading manufacturer of
roofing and building products. Established in 1994,
BMCA received substantially all assets of GAF's
products business and expressly assumed $204

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2005 WL 3370020 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

million of asbestos liability with G-I indemnifying BMCA against additional asbestos liability. *In re G-I Holdings, Inc.,* 323 B.R. 583, 588 (Bankr D.N.J.2005) (citing *In re G-I Holdings, Inc.,* 313 B.R. 612, 621 (Bankr.D.N.J.2004)). Approximately 2,500 state law actions were filed pre-petition against BMCA alleging asbestos-related claims under theories of "successor liability" and/or "alter ego" between G-I and BMCA (First Am. Compl. ¶ 3).

Shortly after G-I filed for chapter 11 bankruptcy protection, the United States trustee appointed the Official Committee of Asbestos Claimants (the " Committee") to represent present asbestos claimants or individuals exposed to G-I's asbestos products pre-petition who had manifested an asbestos related injury prior to plan confirmation. The Bankruptcy Court later appointed C. Judson Hamlin as the Legal Representative to protect the interests of those individuals currently unknown to the parties that have not yet manifested an asbestos-related injury but may hold future claims.

**\*2** On February 7, 2001, Plaintiffs filed an action seeking a declaration that BMCA was not liable for asbestos claims under successor liability and/or alter ego theories. Plaintiffs initiated the suit against six individual asbestos claimants ("Individual Defendants") [FN1] on behalf of themselves and all others similarly situated, including all future asbestos claimants. (*Id.* at 1). The Bankruptcy Court granted the Committee's request to intervene in November 2001. In October 2002, Plaintiffs amended their complaint to drop the class action allegations and to add the Legal Representative as a defendant. The Legal Representative then moved for a judgment on the pleadings, claiming that Plaintiffs were not entitled to relief because: "1) BMCA may not use the Declaratory Judgment Act to obtain a preemptive declaration of non-liability based on state law defenses; 2) the action does not involve a controversy of sufficient immediacy; and 3) Plaintiffs may not seek relief under the Declaratory Judgment Act because Congress has enacted a statute that provides for the specific relief requested." *In re G-I Holdings, Inc.,* 328 B.R. 691, 694 (D.N.J.2004).

FN1. The Individual Defendants are Ruddles A. Bennett, Jr., Earl J. Barrow, Anthony S. Barbera, Jennie Barbera, Gene R. Campbell and Vera L. Campbell. Five of these defendants have died *pendente lite* . Mr. Bennet is the only surviving original defendant. Before G-I filed for bankruptcy, the Individual Defendants filed separate lawsuits against G-I and BMCA, among others, in the state courts of Louisiana, New York and Georgia. (First Am. Compl. ¶¶ 14-17).

In the meantime, the Committee commenced an avoidance action in the Southern District of New York alleging that G-I's predecessor effected a fraudulent transfer of assets to its shareholders, including Samuel Heyman. In May 2003, over G-I's strenuous objection, the Bankruptcy Court granted the Legal Representative's motion to intervene in the Committee's avoidance action against Mr. Heyman. *In re G-I Holdings, Inc.,* 292 B.R. 804, 815 (Bankr.D.N.J.2003).

In its July 6 Order, this Court ruled in favor of the Legal Representative solely on ground three, finding that the forced participation of the Legal Representative is not statutorily authorized and will distort the statutory function of the Legal Representative provided under 11 U.S.C. § 524(g). 328 B.R. at 691. The Court rejected the argument that the Bankruptcy Court's decision allowing the Legal Representative to intervene in the New York avoidance case "confer[s] upon Plaintiffs the power to conscript the Legal Representative as an unwilling defendant in this action." 328 B.R. at 696. The Court reasoned that, because the Legal Representative is a creation of 11 U.S.C. § 524(g), he has no role in this "essentially ... nonbankruptcy action to determine whether BMCA, a non-debtor, carries successor liability from G-I and is therefore liable to asbestos claimants." *Id.* It further held that Plaintiffs' attempt to bypass the safeguards provided under Federal Rule of Civil Procedure 23 by dismissing its class action claims and § 524(g), which each protect the rights of future claimants, was a violation of due process.

Plaintiffs now ask the Court to certify as a final

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 3370020 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

judgment or certify for interlocutory appeal its ruling that the Legal Representative is an inappropriate party in this matter so that Plaintiffs may immediately obtain appellate review of the Court's decision.

## II. Discussion

### A. Rule 54(b)

**\*3** The Court of Appeals has jurisdiction to review only "final decisions" of the district court under 28 U.S.C. § 1291. *In re Diet Drugs Products Liability Litigation,* 401 F.3d 143 (3d Cir.2005). Although an order that disposes of fewer than all claims or the rights and liability of fewer than all parties is normally not appealable, an exception to the general rule exists when an order is certified as appealable by a district court pursuant to Federal Rule of Civil Procedure Rule 54(b). *Id.* at 162. Rule 54(b) permits the district court to separate final decisions from non-final decisions in multiple party or multiple claim litigation to allow for immediate appeal. *Id.* (citing *Allis-Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 363 (3d Cir.1975)). Rule 54(b) provides in part:
When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

In deciding whether to certify judgment on fewer than all claims presented in a multiclaim or multi-party action, a district court must address two distinct issues: first, whether it is dealing with a final judgment in the sense that it is an ultimate disposition of a specific claim in a multi-claim action or a specific party in a multi-party action and if so, the court then must exercise its discretion to determine that the matter is ready for appeal. *Sussex v. Kanasco, Ltd.,* 920 F.2d 1150 (3d Cir.1990)

(citing *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 2, 7 (1980)). Since neither party disputes that the July 6 Order dismissing the Legal Representative was final for the purposes of Rule 54(b) analysis, the Court must analyze only the second issue, whether the judgment is ready for appeal. *See* Legal Representative's Memorandum (" Legal Rep. Mem.") at n. 6; Plaintiffs' Memorandum ("Pls.Mem.") at 12-13.

Once finality is established, a district court then must determine whether the judgment is ready for appeal, or put differently, whether there is any just reason for delay. In deciding whether there is no just reason to delay appeal a district court must balance considerations of judicial administrative interests as well as the equities involved. *Curtiss-Wright Corp.,* 446 U.S. at 8. To make this determination, the Third Circuit in *Allis Chalmers Corp.,* 521 F.2d at 360, identified several factors that the district court should consider: 1) the relationship between the adjudicated and non-adjudicated claims; 2) the possibility that the need for review might be mooted by future developments; 3) the possibility that the reviewing court might be obliged to consider the same issue a second time; 4) the presence or absence of a claim or counterclaim that could result in set-off against the judgment sought to be made final; and 5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of the trial, frivolity of competing claims, expense and the like. Depending on the facts of the particular case, all or some of the above may impact the district court's discretion to certify a judgment as final under Rule 54(b). *Waldorf v. Shuta,* 142 F.3d 601, 609 (3d Cir.1998). Plaintiffs argue that the potential for duplicative trials and inconsistent verdicts along with the wasted resources that would be expended on a retrial weigh in favor of granting Plaintiffs' motion. The Court finds, however, that the potential need for a second trial is outweighed by other relevant judicial administrative interests and the equities involved.

**\*4** First, certifying the July 6 Order as final will serve only to delay the trial as discovery has been completed, the pretrial order is close to finalization and the trial has been scheduled to begin April 3,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2005 WL 3370020 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

2006. In *Panichella v. Pennsylvania Railroad Co.*, 252 F .2d 452, 455 (3d Cir.1958), the Third Circuit ruled that certifying a third-party claim as final was inappropriate at the stage of the case where certification would delay the trial of the principal claim without in any way either simplifying or facilitating its future litigation.[FN2] *See also Emerson v. Wetherill*, No. CIV. A. 92-4082, 1995 WL 94793, at *1 (E.D.Pa.1995) (denying 54(b) certification where discovery was closed, the case was ready to go to trial and a stay of proceedings would delay final disposition of the remaining claims for many months). As Plaintiffs correctly point out, the July 6 Order "does not relate to any of the theories of successor liability or alter ego at issue in this case" (Pls. Mem. at 13-14), thus, granting Rule 54(b) certification now would only delay the declaratory judgment action without simplifying it or facilitating its progress.

> FN2. Additionally, the Court held that if the principal action would not be postponed pending an appeal of the third-party claim there would also be no colorable advantage of authorizing an appeal because the claimed advantage was the opportunity that in the event the appeal succeeds, the merits of the principal claim and the merits of the third party claim can be tried together. As the Legal Representative notes, Plaintiffs must be suggesting that a stay also is necessary. Legal Rep. Mem. at 11, n. 7.

Second, a ruling on the declaratory judgment action could moot the need to review the Court's July 6 Order. If it is determined that Plaintiffs are not entitled to a declaration that BMCA is not liable under the successor liability or alter ego theories, then there will be no need for the Court of Appeals to determine whether the Legal Representative can be a defendant in this action so that a decision granting relief to G-I would be binding on future claimants. *Gerardi v. Pellulo*, 16 F.3d 1363 (3d Cir.1994) (reversing 54(b) certification where outcome of actions remaining before trial court might moot the need to review substantive issues on appeal); *see also Sussex*, 920 F.2d at 1156 (same);

*Panichella*, 252 F.2d at 455 (potential for mootness was in itself "a distinct argument of substantial weight supporting the normal postponement of review until the entire case shall be decided").

Plaintiffs argue that in *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977) and *Carter v. City of Philadelphia*, 181 F.3d 339 (3d CIV.1999), the Third Circuit affirmed entry of judgment under Rule 54(b) to avoid the risk of duplicative trials, even though the appeals in those cases could have been mooted by outcomes at trial. Plaintiffs' Reply Memorandum ("Pls. Reply Mem.") at 5-9. In *Bogosian*, however, the Third Circuit reasoned that although a decision on the claim pending at trial could moot the question presented on appeal, a decision on the pending claim might take a number of years to reach. 561 F.2d at 443. In *Carter*, the Third Circuit was concerned primarily with whether the district court's failure to expressly state its reasons for entering judgment under Rule 54(b) required the Third Circuit to remand the action back to the district court, even though the propriety of the appeal was clearly discernable from the record. 181 F.3d at 346-47. The Court ruled that there was no just reason for delay because 1) the issue presented was plainly separable from the others remaining to be adjudicated, 2) there was no real risk of duplicative appeals and 3) a denial of an immediate appeal could pose a substantial risk of duplicative trials. The Third Circuit discussed only those three factors and did not address the mootness issue.

*5 The facts of those two cases are distinguishable from the present case. In the first place, the declaratory judgment action is scheduled for trial for April 3, 2006, not in "a number of years" as in the *Bogosian* case. Moreover, based on the particular situation of this case, the Court finds that, as in the *Panichella* case, mootness is a distinct argument of substantial weight because the declaratory judgment action will be tried in less than four months, and a judgment adverse to G-I would relieve the Court of Appeals of spending strained judicial resources on an issue that it need not have considered. 252 F.2d at 455.

Plaintiffs' additional contention that entering the July 6 Order as final "implicates important

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 5

Not Reported in F.Supp.2d, 2005 WL 3370020 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

questions that not only impact this Adversary Proceeding but also the Chapter 11 Case and other adversary proceedings" actually cuts against granting Rule 54(b) certification. Pls. Mem. at 17. Certifying the July 6 Order as final could stay other proceedings and potentially halt the progress of other litigation in which Plaintiffs are involved. *See e.g.*, Committee Memorandum ("Comm.Mem.") at 21-22 ("the Committee's ability to prosecute the Securitization Claims is being held hostage to a final resolution of the instant case on the merits").

In addition, Plaintiffs' argument that the July 6 Order impacts other proceedings to the "extent it concludes that the Legal Representative's role is limited to matters involving section 524(g)" is misleading. Pls. Mem. at 15-16. Contrary to Plaintiffs' assertion, the July 6 Order did not "limit[ ] the role of the legal representative," much less do so in a way that "directly impacts the extent to which the due process rights and interests of future claimants." *Id.* at 17. This Court's narrow ruling was that "the forced participation of the Legal Representative in the Successor Liability Action is not statutorily authorized and would be an abuse of his role." 328 B.R. at 698. Even if an immediate appeal of that ruling were authorized, the Third Circuit would not have jurisdiction to opine broadly about its potential implications on hypothetical "future claimants' recoveries and the contour of G-I's chapter 11 plan" as Plaintiffs suggest. Pls. Mem. at 17.

Finally, the circumstances of this case do not justify the discretionary departure from the normal policy of avoiding piecemeal appeals. The disfavoring of piecemeal appeals is a longstanding policy of the federal courts. *Sussex*, 920 F.2d at 1153. The Legal Representative appropriately notes that this Court dismissed Plaintiffs' claims against the Legal Representative on only one of three grounds. Legal Rep. Mem. at 15. Even if the Court of Appeals reversed the Court's decision on that ground, the Legal Representative likely would pursue the other two grounds for dismissal, requiring the court to visit the role of the Legal Representative a second time. *See Gerardi*, 16 F.3d at 1372 ("A district court should be conservative in invoking Rule 54(b) to certify a judgment as final because if an

aggrieved party appeals following the certification, the district court effectively will be electing to control the docket of a court of appeals.")

*6 Rule 54(b) was designed to remedy the harsh effects that could result from a delayed appeal in litigation presenting multiple parties or multiple claims. *Sussex*, 920 F.2d at 1153. It attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties. *Cemar, Inc. v. Nissan Motor Corp.*, 897 F.2d 120 (3d Cir.1990) (citing *Allis-Chalmers*, 521 F.2d at 363)). The Court is not convinced that Plaintiffs will suffer any hardship or injustice if an appeal of the Court's dismissal of the Legal Representative is delayed until the declaratory judgment action is complete. *Allis-Chalmers*, 521 F.2d at 366 ("in the absence of unusual or harsh circumstances, presence of a counterclaim, which would have resulted in a set off ... weighed heavily against granting certification"); *see also Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999 (3d Cir.1992) (party seeking final certification has burden to convince the district court that the case is an "infrequent harsh case" meriting a favorable exercise of discretion); [FN3] *Cf. Bogosian*, 561 F.2d 434 (certifying judgment as final where Defendants would bear uncertainty arising from fact that they may be forced to defend massive litigation years in the future). Instead, granting Rule 54(b) certification could result in a delay of the declaratory judgment action for many months or possibly years, which also could delay other litigation in which Plaintiffs are involved, elicit additional piecemeal appeals and waste the Court of Appeal's time on an issue that may become moot thereby causing needless expenses. Judicial administrative interests and the equities involved weigh in favor of denying the motion to direct entry of final judgment of the Court's July 6 Order.

FN3. Plaintiffs suggest that the Supreme Court, in *Curtiss-Wright Corp.*, 446 U.S. at 10, rejected any court's consideration of the "harsh" "unusual" or "exceptional" nature of a case in making a Rule 54(b) determination. Pls. Reply Mem. at 2-3.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8

Not Reported in F.Supp.2d, 2005 WL 3370020 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**


Plaintiffs' Motion to Direct Entry of Final Judgment
Regarding Dismissal of Legal Representative, or, in
the Alternative, to Certify the Question for
Interlocutor y Appeal (Sep. 12, 2005)
• 2005 WL 2899077 (Trial Motion, Memorandum
and Affidavit) Legal Representative's Memorandum
in Opposition to Plaintiffs' Motion to Direct Entry
of Final Judgment Regarding Dismissal of Legal
Representative, or in the Alternative, to Certify the
Question for Interlocutory Appeal (2005)
• 2002 WL 32994496 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law in Support of
Defendants'    and    Counterclaimant's    Omnibus
Motions in Limine (2002)
• 2002 WL 32994497 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law in Support of
Defendants'    and    Counterclaimant's    Motion    to
Exclude Testimony of Denise Neumann Martin
Pursuant to Daubert and Rules 702 and 703 of the
Federal Rules of Evidence (2002)

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                                    Page 1

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
(Cite as: Slip Copy)

**H**
Briefs and Other Related Documents
In re Enron Corp.S.D.N.Y.,2006.Only the Westlaw
citation is currently available.
United States District Court,S.D. New York.
In re: ENRON CORP., et al., Reorganized Debtors.
ENRON CORP., Plaintiff,
v.
SPRINGFIELD ASSOCIATES, L.L.C. and
Westpac Banking Corporation, Defendants.
ENRON CORP., Plaintiff,
v.
AVENUE SPECIAL SITUATIONS FUND II, LP,
DK Acquisition Partners, LP, RCG Carpathia
Master Fund Ltd., Rushmore Capital-I, L.L.C. and
Rushmore Capital-II, L.L.C., Defendants.
ENRON CORP., Enron North America Corp.,
National Energy Production Corporation, Enron
Power Marketing, Inc., Enron Power & Industrial
Construction Company, Nepco Services
International, Inc. and Nepco Power Procurement
Company, Plaintiffs,
v.
BEAR, STEARNS & CO. INC. and Rushmore
Capital-I, L.L.C., Defendants.
ENRON CORP., Enron North America Corp.,
National Energy Production Corporation, Enron
Power Marketing, Inc., Enron Power & Industrial
Construction Company, Nepco Services
International, Inc. and Nepco Power Procurement
Company, Plaintiffs,
v.
BEAR, STEARNS & CO. INC., DK Acquisition
Partners, LP, Morgan Stanley Emerging Markets,
Inc., Rushmore Capital-II, L.L.C., Strategic Value
Master Fund, Ltd. and Man Mac 3 Limited,
Defendants.
No. 01-16034, ADV. 05-01025, ADV. 05-01029,
ADV. 05-01074, ADV. 05-01105, M-47 (SAS),
ADV. 05-010.

Sept. 5, 2006.

Albert Togut, Scott E. Ratner, Richard K. Milin,
Togut Segal & Segal LLP, New York, NY, for
Enron Corp., et al., debtors-in-possession.
H. Lee Godfrey, Kenneth S. Marks, Mary Kathryn
Sammons, Susman Godfrey L.L.P., Houston, TX,
for Enron Corp., et al., debtors-in-possession.
Richard L. Wasserman, Venable LLP, Baltimore,
MD, for Enron Corp., and Enron North America
Corp., debtors-in-possession and plaintiffs.
David Lee Evans, Theodore J. Folkman, Hanify &
King, P.C., Boston, MA, for defendants Rushmore
Capital-I, L.L.C. Rushmore Capital-II, L.L.C.
Jonathan L. Hochman, Schindler Cohen &
Hochman LLP, New York, NY, for defendants
Strategic Value Master Fund, Ltd. and Man Mac 3
Limited.
Martin Eisenberg, Anna Karpman, Emmet, Marvin
& Martin, LLP, New York, NY, for defendant DK
Acquisition Partners, LP.
Stephen M. Sinaiko, Jonathan A. Popolow, Kramer
Levin Naftalis & Frankel LLP, New York, NY, for
defendant Bear, Stearns & Co. Inc.
David Parker, Edward Grosz, Kleinberg, Kaplan,
Wolff & Cohen, P.C ., New York, NY, for
defendant Springfield Associates, L.L.C.
Stephen J. Shimshak, Douglas R. Davis, Brad S.
Karp, Claudia L. Hammerman, Paul, Weiss,
Rifkind, Wharton & Garrison LLP, New York, NY,
for Intervenors Citibank, N.A.
Hugh McDonald, Allen & Overy LLP, New York,
NY, David H. Braff, Michael T. Tomaino, Jr.,
Jeffrey T. Scott, Sullivan & Cromwell LLP, New
York, NY, for Intervenors Barclays Bank PLC and
its Affiliates.
Herbert Washer, William J.F. Roll III, Seth M. Kean
, Shearman & Sterling LLP, New York, NY, for
Intervenors Merrill Lynch & Co., Inc ., Merrill
Lynch, Pierce, Fenner & Smith Incorporated, and
Merrill Lynch Capital Services, Inc.
Richard W. Clary, Julie A. North, Darin P. McAtee,
Cravath, Swaine & Moore LLP, New York, NY, for
Intervenors Credit Suisse First Boston LLC and its
Affiliates.
John H. Maddock, III, McGuirewoods LLP, New

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

York, NY, Robert Plotkin, Dion W. Hayes, McGuireWoods LLP, Washington, D.C., for Intervenor the Toronto-Dominion Bank.

David S. Elkind, Marc F. Skapof, Ropes & Gray LLP, New York, NY, Matthew M. Burke, Stephen Moeller-Sally, Ropes & Gray LLP, Boston, MA, for FleetBoston Financial Corp., Fleet National Bank, DK Acquisition Partners, L.P., Rushmore Capital-I, L.L.C., Rushmore Capital-II, L.L.C., and RCG Carpathia Master Fund, Ltd.

*OPINION AND ORDER*

SCHEINDLIN, J.

**\*1** Certain defendants and permitted intervenors in the above-captioned coordinated adversary proceedings (the "Adversary Proceedings") request leave to file an interlocutory appeal from two orders of the Bankruptcy Court of the Southern District of New York (Gonzalez, J.) denying defendants' motions to dismiss claims for equitable subordination and for disallowance filed by Enron Corporation and certain of its affiliates (collectively, "Enron").[FN1] In these opinions the Bankruptcy Court held that a transferee's claim against a bankrupt's estate can be subordinated or disallowed solely because of its predecessor-in-interest's misconduct or failure to return avoidable transfers even when there is no finding of wrongdoing or receipt of avoidable transfers by the transferee.

> FN1. The published order from which leave to appeal is sought with respect to equitable subordination is *Enron Corp. v. Avenue Special Situations Fund, II, LP (In re Enron Corp.)*, 333 B.R. 205 (Bankr.S.D.N.Y.2005) (the "subordination opinion"). The Bankruptcy Court issued substantially similar unpublished opinions in the three other adversary proceedings that have been coordinated for the purposes of this motion, as explained *infra* in Part I of this Opinion. The published order on claim disallowance is *Enron Corp. v. Avenue Special Situations Fund, II, LP (In re Enron Corp.)*, 340 B.R. 180 (Bankr.S.D.N.Y.2006) (the "disallowance opinion"). The Bankruptcy Court has not

issued similar opinions in the three other adversary proceedings as of today's date, although it has so-ordered a stipulation allowing defendants and permitted intervenors to brief the issue as if similar orders had already been entered in the three other proceedings.

Defendants and permitted intervenors move for leave to appeal on the grounds that both the subordination and disallowance opinions are erroneous as a matter of law and that immediate appeal is warranted because of the uncertainty that these rulings-if left undisturbed-would inject into the market for the sale of postpetition claims. They argue, in the alternative, that if a claim can be subordinated and disallowed based solely on a transferor's acts or omissions, then the Bankruptcy Court erred by not allowing a "safe harbor" defense for claims that are acquired in good faith and for value. They argue that these holdings unfairly make transferees strictly liable for their transferors' conduct.

Enron, in turn, argues that the opinions were correctly decided based on both statutory construction and equitable principles, despite the absence of any controlling authority. Enron argues that if a transferor can immunize its claims from being subordinated and disallowed by transferring them to a good faith purchaser, this would encourage claim holders who have acted inequitably or who have failed to repay avoidable transfers to "wash" their claims by transferring them. Enron asserts that such an outcome would defeat the very purposes behind equitable subordination and claim disallowance.

Although the parties have separately briefed the subordination and disallowance opinions, both motions for leave to appeal are addressed here together because they both involve the same question-whether a transferee's claim can be subordinated or disallowed solely because of the acts or omissions of its predecessor-in-interest. For the following reasons, defendants and intervenors' motions for leave to appeal are granted.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 3

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

## I. BACKGROUND

On December 2, 2001 (the "Petition Date"), Enron filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the " Bankruptcy Code").[FN2] As of the Petition Date, Enron was an obligor under various credit agreements (the "Credit Arrangements") with certain participating banks (collectively, the " Transferors" or "Intervenors") whose proofs of claim were authorized by the Bankruptcy Court.[FN3] After the Petition Date, the Transferors, who were the original holders of claims asserted against Enron's estate, directly or indirectly transferred the claims to the defendants (or "Transferees") in this case.[FN4]

FN2. *See In re Enron*, 333 B.R. at 211.

FN3. *See id.* at 212.

FN4. *See id.*

*2 On September 24, 2003, Enron filed an adversary proceeding (the "MegaComplaint Proceeding," Docket No. 03-09266) against ten large bank groups, including all of the Transferors that have been allowed by the Bankruptcy Court to intervene in this motion.[FN5] In that action, Enron alleges that the Transferors received certain preferences and fraudulent conveyances and that they aided and abetted Enron's accounting fraud thereby injuring Enron's creditors. Enron seeks recovery of the allegedly improper transfers to the Transferees and equitable subordination of the banks' claims under the Credit Agreements based on allegations of the Transferors' inequitable conduct. The Bankruptcy Court has not yet adjudicated the allegations in the MegaComplaint Proceeding, which the Transferors "vigorously contest." [FN6]

FN5. *See id. See also* Debtors' Complaint for the Avoidance and Return of Preferential Payments and Fraudulent Transfers, Equitable Subordination, and Damages, Together with Objections and Counterclaims to Creditor Defendants'

Claims. Enron filed amended complaints on December 1, 2003, April 30, 2004, June 14, 2004 and January 10, 2005.

FN6. Intervenor Banks' Memorandum of Law in Support of Defendants' Motions for Leave to Appeal From the Decision of the Bankruptcy Court Regarding Section 510(c) ("Intervenors' Subordination Mem." ) at 4; Intervenor Banks' Memorandum of Law in Support of Defendants' Motions for Leave to Appeal From the Decision of the Bankruptcy Court Regarding Section 502(d) of the Bankruptcy Code (" Intervenors' Disallowance Mem.") at 5.

Enron commenced adversary proceedings in the Bankruptcy Court on January 10, 2005, seeking to subordinate and disallow the claims against Enron's estate, which were held by the Transferors as of the Petition Date and subsequently transferred to and asserted by the defendants in these Adversary Proceedings. [FN7] The complaints filed in these Proceedings each assert two causes of action, one for the disallowance of claims under section 502(d) of the Bankruptcy Code and the other for equitable subordination of claims under section 510(c).[FN8]

FN7. *See, e.g.,* Complaint for the Disallowance and Equitable Subordination of Claims Against the Reorganized Debtor Formerly Held by Citigroup, Inc., or its Affiliates, No. 05-01025, dated January 10, 2005 (the "Citigroup Proceedings"). Enron filed similarly styled complaints (collectively, the "Adversary Complaint") against: claims formerly held by Fleet National Bank or its affiliates on January 12, 2005, No. 05-01029 (the "Fleet Proceeding"); claims formerly held by Credit Suisse First Boston or its affiliates on January 19, 2005, No. 05-01074 (the " CFSB Proceeding"); and claims formerly held by Barclays Bank or its affiliates on February 2, 2005, No. 05-01105 (the " Barclays Proceeding").

FN8. *See* Adversary Complaint ¶¶ 50-61.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Enron asserts that if the claims still belonged to the Transferors, they would have been subject to disallowance under section 502(d) and subordination under section 510(c).[FN9] Enron then argues that the transferred claims should be subordinated and disallowed to the same extent as if the Transferors still held them even though there is no allegation that any of the Transferees did anything improper, nor that they received any avoidable transfers. [FN10] Therefore, the sole basis for Enron's section 502(d) and section 510(c) allegations is the alleged acts and omissions of defendants' predecessors-in-interest coupled with the argument that the transference of such claims should have no impact on the applicability of disallowance or subordination.

FN9. *See id.* ¶¶ 52-53, 58.

FN10. *See id.* ¶¶ 54, 59.

After defendants moved to dismiss these adversary proceedings, the Bankruptcy Court entered an order on April 27, 2005 to coordinate briefing on the following issues: whether a claim asserted by a transferee is subject to subordination under section 510(c) or disallowance under section 502(d) solely because the transferor is found to have engaged in conduct that would warrant equitable subordination or disallowance if the claims were still held by the transferor.[FN11] This order also allowed the Intervenor Banks, who are named defendants in the MegaComplaint Proceeding, to intervene for the purposes of briefing and arguing these issues.[FN12] The Transferors have been and remain interested in these adversary proceedings because they may ultimately be liable for the claims they transferred. That is, if such claims are found to be subject to subordination and disallowance and therefore lose monetary value, then the Transferees are likely to seek indemnity from their Transferors.[FN13]

FN11.     *See*     4/27/05     Coordinated Scheduling and Intervention Order ¶ 2 (" [W]hether a claim asserted by a transferee that acquired its claim on or after [the Petition Date] directly or indirectly, from a

defendant in the MegaComplaint Proceeding (each, a 'MegaDefendant') that is alleged to have held such claim on the Petition Date, is subject to (a) subordination under section 510(c) of the Bankruptcy Code solely because such MegaDefendant transferor is found to have engaged in wrongful or inequitable conduct that would warrant equitable subordination of such claim in the hands of such MegaDefendant transferor, or (b) disallowance under section 502(d) of the Bankruptcy Code to the extent that a MegaDefendant transferor(s) that held the claim on or after the Petition Date is found to be an entity from which property is recoverable, or a transferee of avoidance transfers, under section 502(d) of the Bankruptcy Code.").

FN12. *See id.*

FN13. At least one of the Transferees has already brought suit against its Transferor, referencing the suit that Enron has brought against it in the Adversary Complaint and seeking damages for breach of warranty based, in part, on an indemnity clause in the contract. *See* 8/4/05 Complaint in *Westpac Banking Corp. v. Citibank, N.A .,* No. 05 Civ 6939(MBM). This case has been transferred by the Judicial Panel on Multidistrict Litigation to the Southern District of Texas. *See* 2/15/06 Transfer Order.

*3 On November 17, 2005, the Bankruptcy Court denied the motion to dismiss with respect to Enron's equitable subordination claim in the Fleet Proceeding. [FN14] The Bankruptcy Court made two rulings of first impression in the Second Circuit. *First,* the court held that "a claim in the hands of a transferee, either as an initial transferee or a subsequent transferee, who received that claim from a transferor found to have engaged in inequitable conduct is subject to the same equitable relief, as if, [sic] such claim were still held by the transferor." [FN15] *Second,* the court held that "the policy underlying the 'good faith' defense in various

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 5

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

provisions of the Bankruptcy Code does not warrant the extension of such defense to purchasers of claims." [FN16] The court also concluded that even if such a good faith defense was available, it could not be invoked by the defendants because as purchasers of post-petition bankruptcy claims, the transferees were on notice of the risk that such claims could be subordinated.[FN17]

FN14. *See supra* note 1. On November 28, 2005, the Bankruptcy Court issued opinions in the Citigroup, CSFB and Barclays Proceedings that are substantially identical to the November 17 equitable subordination ruling in the Fleet Proceeding. On December 20 and 23, 2005, the Bankruptcy Court entered orders implementing its equitable subordination rulings in the various adversary proceedings. On December 23, 2005, the Bankruptcy Court entered an order coordinating the Fleet, Citigroup, CSFB and Barclays Proceedings for purposes of briefing the motion for leave to appeal the orders denying the motions to dismiss the claims for equitable subordination. That order also permitted the Transferors to brief the issue and they have filed the principal memorandum in support of the motions for leave to appeal the subordination ruling.

FN15. *In re Enron*, 333 B.R. at 210.

FN16. *Id.* at 211.

FN17. *See id.* The defendants who have moved for leave to appeal the subordination ruling have either joined in the Intervenors' brief without filing their own brief, or have filed a brief in their own name that is substantially identical to the Intervenors' brief. The parties and motions before the Court on the subordination ruling are: (1) Springfield Associates LLC, one of two defendants in the Citigroup Proceeding, has filed a memorandum substantially identical to that filed by the

Intervenor Banks; (2) Bear Stearns & Co., Inc. ("Bear"), one of two defendants in the CSFB Proceeding, has moved for leave to appeal relying solely on the Intervenor Banks' brief; (3) Bear, DK Acquisition Partners ("DK"), Strategic Value Master Fund, Ltd. and Man Mac 3 Limited, four of the six defendants in the Barclays Proceeding, have moved for leave to appeal based on their memorandum of law joining in the Intervenors' arguments; (4) DK, RCG Carpathia Master Fund, Ltd. (" RCG"), Rushmore Capital-I, L.L.C. (Rushmore I) and Rushmore Capital-II, L.L.C. (Rushmore II), four of the five defendants in the Fleet Proceeding, have filed a memorandum for leave to appeal that is substantially identical to the Intervenors' brief.

On March 31, 2006, the Bankruptcy Court denied the motions to dismiss with respect to Enron's claim for disallowance in the Fleet Proceeding. The central holding of that ruling is: "Once it is established that a claim in the hands of the transferor would be subject to disallowance, such claim in the hands of a transferee should ... be disallowed to the same extent that such claim would be subject to disallowance in the hand of a transferor." [FN18] As in its subordination ruling, the Bankruptcy Court held as a matter of law that Transferees cannot assert a good faith defense against claims for disallowance, but even if they could, the defense would fail because Transferees had notice of the risk that the claims they purchased might be disallowed.[FN19] On April 28, 2006, the Bankruptcy Court entered an order implementing its disallowance ruling in the Fleet Proceeding.[FN20]

FN18. *In re Enron*, 340 B.R. at 199. This issue has been addressed by only two other district courts which reached opposite conclusions. *See In re Metiom, Inc.*, 301 B.R. 634 (Bankr.S.D.N.Y.2003) (holding that disallowance under section 502(d) applies to the claim and not the claimant) *and Section 1102(A)(1) Comm. of Unsecured Creditors v. Williams*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*Patterson, Inc. (In re Wood & Locker, Inc.),* No. MO 88 CA 011, 1988 U.S. Dist. LEXIS 19501 (W.D.Tex. June 20, 1988) (holding that disallowance only applies to a claimant).

FN19. *Id.* at 205-08.

FN20. Because the disallowance ruling was only entered in the Fleet Proceeding, no defendant from any other proceeding has submitted a brief requesting leave to appeal. In the Fleet Proceeding, DK, RCG, Rushmore I and Rushmore II have submitted a memorandum of law that is substantially identical to the Intervenors' brief. The Transferors once again filed the principal memorandum for leave to appeal the disallowance ruling. Therefore, the Court will only cite to and address the arguments raised in the Intervenors' memoranda on both motions.

## II. LEGAL STANDARD

A. Interlocutory Orders Under Section 158(a)(3)

Appeals from non-final bankruptcy court orders may be taken pursuant to section 158(a)(3) of title 28 of the United States Code.FN21 In deciding whether to grant leave to appeal, reviewing courts apply the standards of section 1292(b) of title 28 of the United States Code, which governs the appealability of interlocutory district court orders.FN22 In order to permit an interlocutory appeal pursuant to section 1292(b), the order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must also show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation." FN23 This standard is strictly applied as interlocutory appeals from bankruptcy courts' decisions are "disfavored" in the Second Circuit. FN24

FN21. *See also* 28 U.S.C. § 158(c)(2) ("

An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.").

FN22. *See In re Adelphia Commc'ns Corp.,* No. 03 Civ. 8848, 2006 WL 1114054, at *3 (S.D.N.Y. Apr. 26, 2006).

FN23. 28 U.S.C. § 1292(b).

FN24. *In re Enron Corp.,* Nos. M-41, 01-16034, 03-93371, 03-93388, 03-93373, 2006 WL 1222035, at *1 (S.D.N.Y. May 3, 2006).

In addition, leave to appeal is warranted only when the movant demonstrates the existence of " exceptional circumstances" FN25 to overcome the " general aversion to piecemeal litigation" FN26 and to "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." FN27 Interlocutory appeal "is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' ... and is not intended as a vehicle to provide early review of difficult rulings in hard cases." FN28 The decision whether to grant an interlocutory appeal from a bankruptcy court order lies with the district court's discretion.FN29

FN25. *Williston v. Eggleston,* 410 F.Supp.2d 274, 276 (S.D.N.Y.2006).

FN26. *In re AroChem Corp.,* 176 F.3d 610, 619 (2d Cir.1999). *Accord Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 95 (2d Cir.1997).

FN27. *Flor v. Bot Fin. Corp. (In re Flor),* 79 F.3d 281, 284 (2d Cir.1996) (quotation marks and citations omitted).

FN28. *Liebert v. Levine (In re Levine ),* No. 94-44257, 2004 WL 764709, at *2

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

(S.D.N.Y. Apr. 9, 2004) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y.1995)).

FN29. *See, e.g., In re Kassover*, 343 F.3d 91, 94 (2d Cir.2003); *DM Rothman Co., Inc. v. Cohen Marketing Int'l, Inc.*, No. 98 Civ. 7905, 2006 WL 2128064, at *1 (S.D.N.Y. July 27, 2006).

*4 "In regard to the first prong, the 'question of law ' must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." [FN30] The question must also be "controlling" in the sense that reversal of the bankruptcy court's order would terminate the action, or at a minimum that determination of the issue on appeal would materially affect the litigation's outcome.[FN31]

FN30. *In re Worldcom*, No. M-47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).

FN31. *See In re XO Commc'ns, Inc.*, Nos. 02-12947, 03 Civ. 1898, 2004 WL 360437, at *3 (S.D.N.Y. Feb. 26, 2004); *North Fork Bank v. Abelson*, 207 B.R. 382, 389-90 (E.D.N.Y.1997).

As to the second prong, the "substantial ground for a difference of opinion" must arise out of a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard.[FN32] The requirement that such a substantial ground exists may be met when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." [FN33] However, it is not sufficient that the relevant case law is "less than clear" or allegedly "not in accord" [FN34] or that there is a "strong disagreement among the parties." [FN35] The mere presence of a disputed issue that is a question of first impression, without more, is insufficient to satisfy this prerequisite.[FN36] The district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *substantial* ground for dispute.

" [FN37] Finally, in regard to the third prong, " '[a]n immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the time required for trial .' " [FN38] Courts place particular emphasis on the importance of this last factor.[FN39]

FN32. *See In re Worldcom*, 2003 WL 21498904, at *10 (citation omitted).

FN33. *In re Lloyd's Am. Trust Funds Litig.*, No. 96 Civ. 1262, 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990)).

FN34. *North Fork Bank*, 207 B.R. at 390 (holding that disagreement between parties about meaning of the term "business trust" did not rise to a level of a "substantial ground for a difference of opinion," because definition of term was not a matter of first impression in the Circuit).

FN35. *Statutory Comm. of Unsecured Creditors v. Motorola, Inc.* (*In re Irridium Operating LLC* ), Nos. 99-45005, 01-02952, M-47, 2003 WL 21507196, at *1 (S.D.N.Y. June 30, 2003) (stating that to demonstrate that there is a substantial ground for difference of opinion a party " must show that the issue is difficult and of first impression and involves more than just a strong disagreement among the parties") (quotation omitted).

FN36. *See In re Flor*, 79 F.3d at 284. The Bankruptcy Court notes in both rulings that there is no controlling precedent. *See In re Enron*, 333 B.R. at 216 ("Enron asserts that its position is based on equitable principles, not on the holding of any particular case cited by it."); *id.* at 224 (stating that in determining whether equitable subordination applies, "no case has limited such consideration in the context of a transferred claim to only the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                          Page 8

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

conduct of the current holder"); *In re Enron,* 340 B.R. at 195-96 ("The Court has not found any case law mandating that the creditor who received an avoidable transfer be the same entity that actually asserts such claim against the debtor in the bankruptcy proceeding in order for a debtor to assert a section 502(d) disallowance against such a claim.").

FN37. *In re Flor,* 79 F.3d at 284 (quotation omitted). *Accord Marlin v. U.S. Trustee,* 333 B.R. 14, 20 (W.D.N.Y.2005).

FN38. *Transportation Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.,* 358 F.Supp.2d 347, 350 (S.D.N.Y.2005) (quoting *In re Oxford Health Plans, Inc.,* 182 F.R.D. 51, 53 (S.D.N.Y.1998)).

FN39. *See Koehler v. Bank of Bermuda, Ltd.,* 101 F.3d 863, 865-66 (2d Cir.1996) (" The use of § 1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation."); *Lerner v. Millenco, L.P.,* 23 F.Supp.2d 345, 347 (S.D.N.Y.1998) ("The Court of Appeals has emphasized the importance of the third consideration in determining the propriety of an interlocutory appeal.").

### B. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure is incorporated into bankruptcy procedure by Rule 7012(b) of the Bankruptcy Rules. A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." ' [FN40] When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor.[FN41] "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." [FN42] Even though the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it

appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief, or if the claim is not legally feasible.[FN43]

FN40. *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

FN41. *See Kirch v. Liberty Media Corp.,* 449 F.3d 388, 392 (2d Cir.2006) (citation omitted).

FN42. *Law Offices of Curtis V. Trinko, L.L.P., v. Bell Atl. Corp.,* 309 F.3d 71, 74 (2d Cir.2002) (quotation omitted).

FN43. *See Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006).

### III. DISCUSSION

This is one of the rare cases in which an immediate review of an interlocutory order is warranted. The three prongs of section 1292(b) are met here and exceptional circumstances exist. The Bankruptcy Court's two rulings-that equitable subordination and disallowance travel with the claim and that there is no good faith defense-mean that if the Transferors' claims are found to be subject to equitable subordination and disallowance in the MegaComplaint Proceeding, then these findings will automatically subordinate and/or disallow defendants' claims. Enron correctly argues that the denials of the motions to dismiss may never need to be reviewed if the MegaComplaint defendants are not found liable of misconduct or of having received avoidable transfers or if there are settlements in either the MegaComplaint or Adversary Proceedings that end the actions against the defendants.[FN44] But it is precisely the risk that these orders will go unreviewed that makes this an exceptional case.

FN44. *See* Enron's Memorandum of Law in Opposition to Defendants' Motions for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 9

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Leave to Appeal From the Bankruptcy Court's Decisions Concerning Equitable Subordination of Claims ("Enron's Subordination Mem.") at 10-11 (citing *U.S. Trustee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), No. 02 Civ. 2854, 2003 WL 21738964, at *4 (S.D.N.Y. July 28, 2003) ("[d]eciding an issue now, which may never need to be decided, does not help to advance the litigation")); Declaration of Richard K. Milin, plaintiff's counsel, in support of Enron's Memorandum of Law in Opposition to Defendants' Motion for Leave to Appeal From the Bankruptcy Court's Ruling Concerning Temporary Disallowance of Transferred Claims under 11 U.S.C. § 502(d) ("Enron's Disallowance Mem.") at ¶ 2 (referring to settlements in the MegaComplaint proceeding).

*5 With respect to the first prong of section 1292(b), the orders being appealed involve pure questions of law and there is no need to make any factual determinations in order to decide whether the rulings are correct. Assuming that the allegations against the Transferors are true-and there are no allegations of impropriety against the transferee-defendants-the question is whether Enron can prevail, as a matter of law, on its equitable subordination and disallowance claims against the defendants.[FN45] If the answer is yes, then the next question is whether defendants are permitted to assert the defense of being good faith purchasers. Neither of these issues require any factual determination. Finally, the orders involve a controlling question of law. If the Bankruptcy Court's rulings denying the dismissal of Enron's two causes of action in the Adversary Proceeding are reversed, this may result in the dismissal of these actions in their entirety.

FN45. *See In re Enron,* 333 B.R. at 215 (" Thus for purposes of the Motion to Dismiss, the Court accepts as true all of the material allegations in the Plaintiff's complaint. Further, for purposes of this

motion, the Defendants do not dispute any of the factual allegations regarding the [Transferor]. The focus of the Defendant's [sic] motion is that, even if such allegations were true, the cause of action for equitable subordination fails as a matter of law.").

The second prong requires the Court to analyze the strength of the Intervenors' arguments to determine if there is a "substantial ground for difference of opinion." [FN46] The Intervenors argue that the Bankruptcy Court erred in its subordination opinion by ignoring well-established "principles of equitable subordination" found in the language of section 510(c) and its legislative history, and instead inappropriately relied on analogies to the law of assignments and the assignment of priority wage claims. [FN47] The Bankruptcy Court drew these analogies to support its conclusion that a transferee could enjoy no greater rights than the transferor.[FN48] "On the contrary, case law has affirmed the principle that under a bankruptcy proceeding, '[a]n assignee stands in the shoes of the assignor and subject to all equities against the assignor." ' [FN49] The Bankruptcy Court also referenced two cases holding that the assignment of a claim for wages cannot change the statutory priority of that claim; rather, the claim for wages has the same priority when held by the assignee as it would have had were it still held by the wage earner. [FN50]

FN46. 28 U.S.C. § 1292(b).

FN47. *See* Intervenors' Subordination Mem. at 9-16.

FN48. *See In re Enron,* 333 B.R. at 223.

FN49. *Id.* (quoting *Goldie v. Cox,* 130 F.2d 695, 720 (8th Cir.1942) (citing *Fidelity Mut. Life Ins. Co. v. Clark,* 203 U.S. 64, 74 (1906))).

FN50. *See id.* at 223-24 (citing *Shropshire, Woodliff & Co. v. Bush et al.,* 204 U.S. 186, 189 (1907) and *Wilson v. Brooks*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

*Supermarket, Inc. (In re Missionary Baptist Found. of Am.)*, 667 F.2d 1244, 1247 (5th Cir.1982)).

The Intervenors further argue that the analogy to the law of assignments is misguided because the Bankruptcy Court assumed the truth of its conclusion. [FN51] If equitable subordination is required no matter who owns the claim, then the analogy to assignment law logically follows. But if the correct interpretation of section 510(c) is that equitable subordination can only apply to a claimant because of its own wrongdoing, then the law of assignments is simply not relevant. [FN52]

FN51. *See* Intervenors' Subordination Mem. at 14-16.

FN52. *See id.*

The Intervenors also argue that the Bankruptcy Court erred in interpreting section 510(c) by selectively focusing on one part of the statute and ignoring the rest. [FN53] Section 510(c) states: " [A]fter notice and a hearing, the court may ... under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another claim...." The Bankruptcy Court focused on the fact that section 510(c) mentions "claims" instead of "claimants" which the Court interpreted to mean that Congress did not intend to limit the section's application to the claimant at the time that the claim was asserted. [FN54] By contrast, the Intervenors point to the importance of the phrase "principles of equitable subordination" which they claim that the Bankruptcy Court failed to consider. [FN55]

FN53. *See id.* at 9-10.

FN54. *See id.* at 9-14. *See also In re Enron*, 333 B.R. at 225.

FN55. *See* Intervenors' Mem. at 9-10.

**\*6** The Intervenors provide a substantial and facially persuasive argument that the language of

section 510(c) and its legislative history, as well as case law, indicate that the "principles of equitable subordination" do not allow the doctrine to be applied to innocent claim holders. [FN56] Without deciding the merits of this argument, I note that in its leading opinion on equitable subordination, the Supreme Court stated that it "need not decide today whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated." [FN57] But the Court did state that "the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Code." [FN58]

FN56. Because the Supreme Court has already explained that legislative history is useful in interpreting the meaning of the phrase the "principles of equitable subordination" in the context of section 510(c), the Court need not examine whether other avenues of interpretation have been exhausted before considering the legislative history. *See United States v. Nolan*, 517 U.S. 535, 543 (1996). *See also United States v. Boccagna*, 450 F.3d 107, 114 (2d Cir.2006) ("Only if we conclude that statutory language is ambiguous 'do we resort ... to canons of construction and, if the meaning [still] remains ambiguous, to legislative history.' ") (quoting *Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir.2005)).

FN57. *Nolan*, 517 U.S. at 543.

FN58. *Id.*

The important question raised by the Intervenors is whether the Bankruptcy Court, in holding that equitable subordination may be applied to an innocent claim holder, impermissibly operated at " the level of policy choice" which is reserved for Congress. Intervenors make the same argument with respect to the Bankruptcy Court's holding that an innocent transferee cannot assert a good faith defense to a claim of equitable subordination. Intervenors argue that this holding contradicts the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Congressional policy choice, revealed in various sections of the Bankruptcy Code, that protects the claims of innocent transferees.[FN59]

> FN59. *See* Intervenors' Subordination Mem. at 16-18; *see also* Intervenors' Disallowance Mem. at 17-18.

Enron argues that the Bankruptcy Court's holding that transferring a claim cannot immunize it from subordination is correct "as a matter of precedent, policy, equity and common sense."[FN60] To reverse this holding would authorize creditors to "wash" their claims through transfer, thereby eliminating the remedy of equitable subordination, which no court decision has ever endorsed.[FN61] Enron maintains that the Intervenors' argument that an innocent transferee's claims can never be subordinated is erroneous.[FN62] As noted earlier, the Supreme Court in *Nolan* left open the question of whether there must always be creditor misconduct before a claim may be subordinated. After *Nolan*, two appellate courts have held that in certain circumstances, such as stock redemption claims and prepetition tax penalties, creditor misconduct is not a prerequisite for the application of disallowance .[FN63]

> FN60. Enron's Subordination Mem. at 5.

> FN61. *See id.* at 26-28.

> FN62. *See id.* at 32-35.

> FN63. *See id.* at 33 (citing *SPC Plastics Corp. v. Griffith (In re Structurelite Plastics Corp.)*, 224 B.R. 27, 35 (6th Cir.B.A.P.1998) and *In re Lifshultz Fast Freight*, 132 F.3d 339, 348 (7th Cir.1997)).

Enron next argues that purchasers of postpetition claims are well aware of the risk that the claims they purchase may be subordinated, and protect themselves from this risk by obtaining contractual indemnities which are not available to those creditors whose claims arose prepetition. Relying on such indemnities (or other contractual rights),

some Transferees in these proceedings have sued their Transferors for transferring tainted claims.[FN64] Enron argues that this explains why the Transferors have taken the lead in litigating this motion: "the Transferors are asking this Court to make an immediate ruling that Enron must pay ' innocent' claim assignees so that the Transferors-despite the inequitable conduct alleged in [MegaComplaint Proceeding]-do not have to. Nothing could be more inequitable."[FN65] Enron asserts that the subordination ruling correctly held that as a practical matter, it would be unduly burdensome to require bankruptcy estates to make distributions to all innocent claimants and then bring an action against transferors for recompense. Finally, Enron argues that the Congressional policy of protecting innocent transferees is best served by protecting Enron's prepetition creditors who have acted in good faith and by not requiring them to share their recoveries from the estate with creditors, or their transferees, who "acted inequitably to the innocent creditors' detriment."[FN66]

> FN64. *See id.* at 36.

> FN65. *Id.* at 27-28.

> FN66. *Id.* at 41.

**\*7** This summary of the various arguments reveals a substantial ground for a difference of opinion on a difficult issue of first impression in this circuit. Thus, the requirements of the second prong are met with respect to the issues raised on the appeal of the subordination ruling.

The same is true of the disallowance ruling. The Intervenors argue that the Bankruptcy Court ignored both the plain language of, and the purpose behind, section 502(d), relying instead on its own policy preferences.[FN67] Section 502(d) states:

> FN67. *See* Intervenors' Disallowance Mem. at 1-3.

[T]he court shall disallow any claim of any entity from which property is recoverable under section

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(I), 542, 543, 550, or 553 of this title. The Bankruptcy Court interpreted this statute to mean that disallowance applies to a claim without reference to its holder: "This statutory reference is to *any claim.* There is no requirement that a claim subject to a section 502(d) disallowance be related to an avoidable transfer." [FN68]

FN68. *In re Enron,* 340 B.R. at 194.

The Intervenors argue that the Bankruptcy Court erroneously isolated the words "any claim" from the rest of section 502(d) and that the correct statutory reference is to "any claim of any entity that is a transferee of a transfer avoidable" under the Bankruptcy Code.[FN69] The statutory language does not focus on "any claim" but rather on *"any entity"* that has received an avoidable transfer. Because there are no allegations that the defendants have received any avoidable transfers, their claims cannot be disallowed by the first clause of section 502(d). This reading is further supported by the final clause of section 502(d) ("unless such entity .... ") which explains that disallowance cannot be applied when the entity has "turned over" any transfer for which it is liable. The Intervenors argue that this last clause again shows that the focus of section 502(d) is on the entity and not the claim, because only the entity that has received the avoidable transfer is capable of turning it over so as to prevent the claims from being disallowed. [FN70]

FN69. *See* Intervenors' Disallowance Mem. at 10 (quoting § 510(d)).

FN70. *See id.* at 11.

The legislative history of section 502(d), as well as the case law, indicate that its purpose is to promote a fair distribution of the estate's assets by disallowing a creditor from asserting a claim until

he pays the estate what he owes.[FN71] The Intervenors argue that this purpose is not implicated here because the Transferors who allegedly received avoidable transfers are not asserting claims against the estate while the Transferees who are asserting claims are not alleged to have improperly received transfers. [FN72] The Bankruptcy Court found that the coercive purpose of section 502(d) in forcing debts to be repaid could be effectively met by disallowing defendants' claims, thereby forcing them to seek indemnity from the Transferors.[FN73] The Transferors argue that this indirect attempt at coercion will not be effective when transferees lack indemnity agreements and that it contravenes the Congressional policy choice of protecting good faith purchasers.[FN74] Finally, the Intervenors claim that the Bankruptcy Court erroneously relied on policy justifications in holding that claims can be disallowed regardless of who holds them.[FN75]

FN71. *See id.* at 14-16 (citing, *inter alia, Campbell v. United States* (*In re Davis* ), 889 F.2d 658, 662-63 (5th Cir.1989); *Sharp v. Chase Manhattan Bank USA, N.A.* (*In re Commercial Fin. Servs., Inc.*), 322 B.R. 440, 452 (N.D.Okla.2003)).

FN72. *See id.* at 15.

FN73. *See In re Enron,* 340 B.R. 202-03.

FN74. *See* Intervenors' Disallowance Mem. at 17.

FN75. *See In re Enron,* 340 B.R. at 205 (" When one balances the harm to the other members of the injured-creditor class as against the risks to a claim-purchaser who voluntarily becomes a participant in the bankruptcy process, the interests of the other members of the injured-creditor class prevail.").

**\*8** Enron, by contrast, argues that the Bankruptcy Court correctly applied the disallowance provision of section 502(d) by refusing to allow creditors to immunize their claims by transferring them.[FN76] Enron argues that bankruptcy law has consistently

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                           Page 13

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

found that transferees cannot stand in any better position than their assignor.[FN77] For example, a creditor's rights are generally determined by reference to the petition date, such that postpetition transferors are unable to alter a claim's characteristics. [FN78] Enron disputes Transferors' assertion that no case before *Metiom* disallowed a transferred claim, noting that while "the Transferors may have found no *published opinion* directly on point, [ ] that may mean only that no one *disputed* that transferred claims could be disallowed." [FN79] Finally, Enron argues that transferees can protect themselves from the risk that their claims will be disallowed through contractual provisions. But if transferred claims are not subject to disallowance, then bankruptcy estates are unprotected as they cannot prevent disreputable creditors from transferring their claims. [FN80] For these reasons, the disallowance motion meets the requirements of the second prong of section 1292(b) because the issues for appeal raise substantial grounds for dispute.

FN76. *See* Enron's Disallowance Mem. at 2-3; *see id.* at 15-16. *See also In re Metiom*, 301 B.R. at 643 (holding that allowing an assignment to immunize a claim would be a "pernicious result").

FN77. *See* Enron's Disallowance Mem. at 19-20.

FN78. *See id.* at 20.

FN79. *Id.* at 19.

FN80. *See id.* at 20-21.

The third prong is easily met, because granting leave to appeal both the subordination and disallowance opinions may result in the disposition of the Adversary Proceedings in their entirety. In its Adversary Complaint, Enron alleged only two causes of action, one for subordination and one for disallowance. The Bankruptcy Court ruled that both causes of action are viable. If both of these opinions are reversed, Enron's case may be dismissed.

## V. CONCLUSION

For the foregoing reasons, the defendants and Intervenors' motions for leave to appeal are granted. The parties are to agree on and submit an expedited briefing schedule no later than September 12, 2006. SO ORDERED:

S.D.N.Y.,2006.
In re Enron Corp.
Slip Copy, 2006 WL 2548592 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3619097 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Appellants DK Acquisition Partners, L.P., RCG Carpathia Master Fund Ltd., Rushmore Capital-I, L.L.C. and Rushmore Capital-II, L.L.C. (Oct. 10, 2006)
• 2006 WL 3619098 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Appellants DK Acquisition Partners, L.P., RCG Carpathia Master Fund Ltd., Rushmore Capital-I, L.L.C. and Rushmore Capital-II, L.L.C. (Oct. 10, 2006)
• 2006 WL 3619100 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Appellants DK Acquisition Partners, L.P., RCG Carpathia Master Fund Ltd., Rushmore Capital-I, L.L.C. and Rushmore Capital-II, L.L.C. (Oct. 10, 2006)
• 2006 WL 3619101 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Appellants DK Acquisition Partners, L.P., RCG Carpathia Master Fund Ltd., Rushmore Capital-I, L.L.C. and Rushmore Capital-II, L.L.C. (Oct. 10, 2006)
• 2006 WL 3619147 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Appellants DK Acquisition Partners, L.P., RCG Carpathia Master Fund Ltd., Rushmore Capital-I, L.L.C. and Rushmore Capital-II, L.L.C. (Oct. 10, 2006)
• 2005 WL 3038836 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Lehman's Motion for Leave to Appeal from the Decision of the Bankruptcy Court (Aug. 1, 2005)
• 2005 WL 4124976 (Trial Motion, Memorandum and Affidavit) Enron's Memorandum of Law in Opposition to the Motion of Certain Trade Associations for Leave to File Brief of Amici Curiae in Support of Defendants' Motion for Leave

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2548592 (S.D.N.Y.)
**(Cite as: Slip Copy)**

to Bring Interlocutory Appeal (Feb. 28, 2005)
• 2002 WL 32155462 (Trial Filing) Opposition of
Mission Iowa Wind Company and Storm Lake
Power Partners I LLC to Application Seeking to
Approve the Debtors' Proposed ""Allocation
Formulation" or Otherwise Seeking to Allocate Any
""Shared Expenses" to Any of the Enron Wind
Debtors (Oct. 28, 2002)
• 2002 WL 33966522 () (Transcript) (Apr. 30,
2002) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

₩
Briefs and Other Related Documents
In re Laramie Associates, Ltd. v. General
Syndicators of AmericaE.D.Pa.,1997.Only the
Westlaw citation is currently available.
    United States District Court, E.D. Pennsylvania.
    In Re: LARAMIE ASSOCIATES, LTD., Debtor,
    PROVIDENT LIFE AND ACCIDENT
        INSURANCE CO., Plaintiff,
                    v.
GENERAL SYNDICATORS OF AMERICA,
MANAGERS, INC., IMC, Inc., John Doe and John
    Doe Corp., Defendants.
    No. CIV.A . 97-3135, 95-19102DAS.

            Sept. 8, 1997.

Robert Kramer, Robert M. Kramer & Associates,
King of Prussia, PA, for Laramie Associates, Ltd.,
Debtor.
Michael N. Onufrak, White and Williams, Phila,
PA, for Provident Life and Accident Insurance
Company, Plaintiff.
Neil A. Morris, Neil A. Morris Associates, P.C.,
Philadelphia, PA, for General Syndicators of
America Managers, Inc., Defendant.
Frederick Baker, Esq., Philadelphia, PA, Pro se.

        *MEMORANDUM OF DECISION*
McGLYNN, J.
**1** Presently before the Court is a non-core
proceeding initiated in bankruptcy court by
Provident Life and Accident Insurance Co. ("
Plaintiff"), on behalf of Laramie Associates, a
Chapter 11 debtor ("Debtor"). The bankruptcy
court has submitted its Report and Recommendation
containing Proposed Findings of Fact and
Conclusions of Law pursuant to 28 U.S.C. §
157(c)(1) and Bankruptcy Rule 9033 ("Proposed
Findings"), and plaintiff has filed specific
objections thereto. Plaintiff has also filed a
subsequent appeal pursuant to Bankruptcy Rule of
Procedure 8002, which will be consolidated with

plaintiff's objections to the Proposed Findings.

Based upon the Court's independent review of the
entire record and upon consideration of the
bankruptcy court's proposed findings, *see* 28 U.S.C.
§ 157(c)(1), the Court makes the following:

            FINDINGS OF FACT[FN1]

    FN1. The facts are taken from the
    Proposed Findings, except where indicated
    otherwise.

1. Debtor filed the voluntary Chapter 11 bankruptcy
case underlying the above-captioned adversary
proceeding on November 17, 1995.

2. Plaintiff filed the adversary proceeding on
debtor's behalf on September 17, 1996 against
General Syndicators of America, Inc. ("GSA"),
Managers, Inc. ("Managers") (collectively GSA and
Managers are referenced as the "Defendants"), and
Thomas F. Flatley, the president and sole
shareholder of both GSA and Managers. Plaintiff is
the first mortgagee of the debtor's single real estate
asset, the Gateway Shopping Center, located in
Laramie, Wyoming (the "Property").

3. In its original complaint, Provident asserted
claims for fraudulent transfers of property, breach
of contract, punitive damages, conversion, unjust
enrichment, civil conspiracy and sought a turnover
of funds under 11 U.S.C. § 542. The trial, originally
scheduled for October 9, 1996, was continued until
January 8, 1997.

4. On November 13, 1996, the bankruptcy court
issued an order/memorandum in which it partially
granted the defendants' summary judgment motion
by dismissing Flatley as a party defendant. The
bankruptcy court also determined that the lease
between the debtor and GSA included a waiver of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 2

the right to a jury trial. Although the bankruptcy court denied all other aspects of defendants' motion, it did grant plaintiff permission to file an amended complaint.

5. On November 14, 1996, after a hearing on defendants' motion to compel discovery, the bankruptcy court issued an order which granted much of defendants' motion but restricted discovery to a period beginning on January 1, 1994 and concluding at the discovery deadline.

6. Plaintiff filed an amended complaint on November 18, 1996 in which it added IMC, Inc. as a defendant in place of Flatley and asserted an additional claim for collection of a debt owed by GSA to debtor under the Intermediate Lease. In response, the defendants filed a motion to dismiss; however, the bankruptcy court reserved its decision on the motion until trial.

*2 7. The non-jury trial in the above-captioned matter took place on January 8, 1997.

8. At trial, plaintiff disclosed that it held a first mortgage on the Property in the amount of $4,927,952.81 as of the date of filing. In addition, other mortgagees on the Property included Norwest Bank Wyoming (allegedly owed $1,054,135), GSA (allegedly owed $3,692,051), and Pension Group Investors (a wrap mortgage in the alleged amount of $5,435,243).

9. The debtor, acting through Managers, entered into the Lease with GSA, which acted through its two general partners, Managers and IMC. Debtor leased the property to GSA in consideration for, *inter alia,* payments of fixed rent in certain amounts stipulated in the Lease. GSA then entered into several subleases with "actual" tenants of the property.

10. As referenced in the plaintiff's amended complaint, the relevant time period for this proceeding begins on March 1, 1995, when debtor defaulted on its mortgage payments to plaintiff. The time period ends on September 10, 1995, when plaintiff enforced its rights to obtain the rents directly from the actual tenants. Plaintiff eventually

obtained title to the Property under the terms of the confirmed plan.

11. For the year 1995, the fixed rent payments owed to debtor by GSA were in the amount of $100,000 per month.

12. Debtor has not paid any mortgage payments to plaintiff since May 1995, which accounted for payments through March 1995, despite the fact that GSA collected rents from the actual tenants after that time. In fact, the total amount of rents collected by GSA from February 1, 1995 to November 17, 1995, the date of the bankruptcy filing, was $573,161.65.

13. The rents collected by GSA from the tenants of the Property were pooled with the rents collected by GSA from the tenants of other real estate partnerships which were owned and controlled by GSA, Flatley, or other Flatley-owned or Flatley-controlled entities.

14. GSA paid $37,282.38 in expenses on behalf of the debtor from April 5, 1995 to September 25, 1995. No information was provided for expenses from February 1, 1995 to April 4, 1995, or in any other time period. GSA also made two mortgage payments to Provident during 1995, which totalled approximately $110,000.

15. Although no business ledgers of GSA were introduced at trial, GSA did "pay" the debtor $1.2 million in fixed rent in 1995 by giving the debtor a credit on its loan balance, as reported in its income tax returns, for that amount.

16. At trial, Flatley described the concept of syndicated real estate transactions engaged in by GSA and him from 1983 to 1986. During this time, he syndicated ten partnerships which owned a total of fourteen properties, located in different locations around the country. This syndication process was discontinued in the mid-1980s after changing tax laws eliminated the tax advantages for the investors. All but two of the partnerships syndicated have now been subject to foreclosure.

*3 17. Debtor includes forty-eight investors.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Environmental problems at the Property reduced its value and made it impossible to refinance.

18. Flatley contended that the Lease was " non-recourse to GSA." In fact, because the rents due under the Lease were in excess of the rents collected from the "actual" tenants, it was contemplated that the rents due under the Lease would be credited to GSA's mortgage against the Property.

19. However, the Lease provides, in relevant part:
[t]he Fixed Rent shall be paid by Lessee at the monthly rate herein provided in monthly installments in advance on the first day of each calendar month during the term hereof, *in lawful money of the United States which shall be legal tender in payment of all debts and dues ...* public or private, at the time of payment , at Lessor's office address above set forth, or at such other place as Lessor may from time to time designate in writing, together with such other sums as are herein provided to be paid as additional rent, ... (emphasis added)

20. Notwithstanding the above paragraph, the Lease further provides, at § 31:
THIRTY-FIRST: (a) Notwithstanding anything to the contrary contained in this lease, it is specifically understood and agreed that the liability of Lessee hereunder shall be limited to Lessee's interest in this lease, and Lessor hereby agrees that its sole remedy as a result of a breach of any of the terms, covenants or conditions hereof by Lessee shall be to terminate this lease and Lessee's interest in the demised premises and Lessor shall not seek any judgment against Lessee, or any officer, director, shareholder or principal of Lessee, disclosed or undisclosed, or any assignee or sublessee of Lessee, provided, however, that Lessee shall without limitation as to liability, be liable for any and all funds held by Lessee to which Lessor may be entitled under the provisions of this lease.
(b) Notwithstanding anything to the contrary contained in this lease, it is specifically understood and agreed that the liability of Lessor shall be limited to the interest of Lessor in the demised premises, and Lessee shall not seek any judgment

against Lessor, or any general or limited partner of Lessor and Lessee hereby agrees that any judgment it may obtain against Lessor as a result of a breach of the terms, covenants or conditions hereof by Lessor shall be enforceable solely against Lessor's interest in the demised premises.

This provision purportedly supports Flatley's testimony that no "real" liability for rent was established under the Lease.

21. At the conclusion of the trial, the parties submitted Proposed Findings of Fact and Conclusions of Law. In its submission, plaintiff argued three causes of action: "actual" fraudulent conveyances, "constructive" fraudulent conveyances, and preferences. Of these three, only the actual fraudulent conveyance claim was referenced in plaintiff's amended complaint. Plaintiff further stated that the bankruptcy court need not decide its other claims, including breach of contract, unjust enrichment, civil conspiracy, turnover under 11 U.S.C. § 542, and conversion.

*4 22. In their submission, defendants opposed plaintiff's efforts to expand the claims set forth in the amended complaint in its post-trial submission, since they had no notice or opportunity to defend these issues.

23. After the bankruptcy court issued its Report and Recommendation, in which it recommended the dismissal of plaintiff's complaint, plaintiff filed two motions: (1) a Motion for Leave to Take Further Discovery in Order for the Court to Amend or Make Additional Findings of Fact and Conclusions of Law, or in the Alternative, for a New Trial; and, (2) Motion for Reconsideration of the Court's Report and Recommendations.

24. The bankruptcy court denied both motions and ordered that its Report and Recommendation would stand as originally issued.

## DISCUSSION

This action is based on plaintiff's claim that a transfer of $573,161.65 in rents paid by the tenants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4

Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

of debtor's property between February 1995 and November 17, 1995 is avoidable as a pre-bankruptcy fraudulent transfer. Plaintiff seeks to avoid this transfer pursuant to § 548(a)(1) of the Bankruptcy Code, which provides:

(a) The trustee may avoid any transfer of any interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily --

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; ...

*See generally Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 645 (3d Cir. 1991), *cert. denied sub nom. Committee of Unsecured Creditors v. Mellon Bank, N.A.,* 503 U.S. 937 (1992). Since GSA was only obligated to pay the monthly fixed rent to the debtor, the bankruptcy court concluded that the only possible offending conduct was that GSA paid money that it owed to the debtor to the creditors of other Flatley-controlled partnerships. According to the bankruptcy court, the act of failing to pay the rent that GSA allegedly owed to the debtor under the lease was an indirect transfer of the debtor's property. This conclusion is buttressed by two additional facts: GSA was an insider of the debtor and GSA paid the money it owed to the creditors of other Flatley-controlled partnerships.

The bankruptcy court used a "badges of fraud" analysis to examine the record for proof of actual fraud under § 548(a)(1), i.e., to hinder, delay, or defraud creditors.[FN2] After it determined that only two of the eleven badges of fraud had been proven (badges (1) and (9)), it concluded that plaintiff did not present "clear and convincing" evidence of any intent of GSA to hinder or delay payment to the debtor. Consequently, it denied plaintiff's claims under 11 U.S.C. § 548(a)(1).

FN2. Specifically, the bankruptcy court applied the list of "badges of fraud" set

forth in § 4(b) of the proposed Uniform Fraudulent Transfers Act:

(b) In determining actual intent ... consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and,

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

7A UNIFORM LAWS ANNOTATED 653 (1965); *see also In re Pinto Trucking Service, Inc.,* 93 B.R. 379, 386 (Bankr. E.D. Pa. 1988).

**\*5** The bankruptcy court also concluded that plaintiff had abandoned its claims for breach of contract, unjust enrichment, civil conspiracy, turnover under 11 U.S.C. § 542 and conversion. Since plaintiff failed to discuss these theories of liability in its post-trial submission and instead directed the bankruptcy court not to make a decision under these claims, the court merely questioned the merits of these claims but declined to resolve them. Although the bankruptcy court did not encourage plaintiff to file an amended

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

complaint, it nevertheless granted plaintiff an additional fifteen days from the date of the order to amend its amended complaint and clarify its position on these claims.

Because it denied plaintiff's only viable claim, the bankruptcy court recommended a dismissal of plaintiff's complaint. Instead of filing an amended complaint, plaintiff filed a motion for leave to take further discovery and for reconsideration of the court's report and recommendation. The bankruptcy court denied both. Plaintiff also objected to two findings of fact and three proposed conclusions of law in the court's report and recommendation.[FN3] For the reasons stated below, this Court will adopt the bankruptcy court's report and recommendation and dismiss plaintiff's complaint.

> FN3. As stated previously, plaintiff also filed an appeal pursuant to Bankruptcy Rule of Procedure 8002. Because plaintiff's appeal will be consolidated with its objections, plaintiff's appellate brief will be considered as a brief in support of its initial objections.

Pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033(d), this Court must enter judgment after " considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." De novo review requires this Court to make an independent judgment of the issues. *Crossley v. Lieberman,* 90 B.R. 682, 685 (E.D. Pa. 1988), *aff'd* 868 F.2d 566 (3d Cir. 1989); *Matter of Campbell,* 812 F.2d 1465, 1467 (4th Cir. 1987); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1210 (7th Cir. 1984). To this end, this Court has reviewed the entire record in this matter and has arrived at the following:

### CONCLUSIONS OF LAW

1. The standard of review in this matter is "clearly erroneous" as to findings of fact by the bankruptcy court, and "plenary" as to conclusions of law. *In re Stendardo,* 991 F.2d 1089, 1094 (3d Cir. 1993);

*Brown v. Pennsylvania State Employee Credit Union,* 851 F.2d 89 (3d Cir. 1988).

2. Neither Proposed Finding of Fact No. 12 nor No. 13, to which the plaintiff specifically objected, are clearly erroneous. These findings are supported by the record, and this Court will let them stand as Findings of Fact Nos. 15 and 16 in this Memorandum.

3. Since plaintiff has not proven a sufficient number of "badges of fraud," plaintiff cannot prove the existence of actual fraud under § 548(a)(1) to render the transfer of $573,161.65 in rents paid to GSA avoidable. *See In re Pinto Trucking Service, Inc.,* 93 B.R. 379, 386 (Bankr. E.D. Pa. 1988) (a " goodly number" of badges of fraud must be shown by clear and convincing evidence). Although this Court adopts the bankruptcy court's conclusion in this regard, this Court will nevertheless review plaintiff's objection.

*6 In its objection and subsequent appeal to this Court, plaintiff focuses almost entirely on the bankruptcy court's conclusion that the debtor may have received reasonably equivalent value for the transfer of rent money due to it from GSA. In determining the presence of actual fraud, the court may consider whether "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." 7A UNIFORM LAWS ANNOTATED 653 (1965); *see supra* note 2. Whether a transfer is made for reasonably equivalent value is a question of fact to be determined from all the evidence in the case. *See Mellon Bank v. Official Comm. of Unsecured Creditors of R.M.L., Inc.,* 92 F.3d 139, 149 (3d Cir. 1996); *Jobin v. Resolution Trust Corp.,* 160 B.R. 161, 169 (D. Colo. 1993). Although a transfer of property made solely for the benefit of a third party is not usually made for reasonably equivalent value,[FN4] the court applied the exception: when a debtor receives the benefit of the original consideration, then he has received reasonably equivalent value. *See In re R.W. L., Inc.,* 195 B.R. 602, 618 (Bankr. M.D. Pa. 1996) (citing *In re Chicago, Missouri & Western Railway Co.,* 124 B.R. 769, 773 (Bankr. N.D. Ill. 1991)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 6

Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

FN4. *See Jobin v. Resolution Trust Corp.,* 160 B.R. 161, 169 (D. Colo. 1993) (" transfers made to benefit third parties generally are not made for reasonably equivalent consideration); *In re Factory Tire Distributors, Inc.,* 64 B.R. 335, 338-39 (Bankr. W.D. Pa. 1986).

In support of this exception, defendants' testified that from 1983 to 1995, debtor had been sustained by a pool of funds and services valued at more than it had or was required to contribute to the pool. Because no evidence was presented to contradict this testimony or the fact that debtor survived for over ten years without defaulting on its $660,000 annual mortgage, the court could assume that reasonably equivalent value was received.

Plaintiff disputes the conclusion that value was received for this transfer and criticizes the bankruptcy court for engaging in "pure speculation in proposing that it was possible that some value may have been given at some time for some transfers." *See* Pl. App. Brief at 9. In addition, plaintiff asserts that it was unable to present any contradictory evidence because the bankruptcy court limited plaintiff to obtaining discovery on the pooled payments from January 1, 1994 to the date of the requests. *See* Bankruptcy Court's Order of 11/8/96 (Scholl, Bankr. Judge); *supra* p. 3, ¶ 5. Plaintiff argues that it was "severely prejudiced by the bankruptcy court's discovery limitation and denied the right of effective cross-examination and a fair trial on a critical issue of the case." Pl. Obj. at 2. Plaintiff seeks a discovery on these issues and a new trial.

In light of the bankruptcy court's conclusions as to the other ten badges of fraud, *see supra* p. 9 and note 2, plaintiff overestimates the significance of this issue. Although the Court agrees that the bankruptcy court's order did limit plaintiff's ability to discover potentially relevant evidence, this Court nevertheless concludes that this additional discovery, even if helpful for the plaintiff, will not be sufficient to prove a "goodly" number of badges of fraud necessary to support an actual fraudulent conveyance claim. Plaintiff will have proven, at most, three of the eleven badges of fraud considered

to determine the presence of actual fraud. Therefore, plaintiff cannot prove by clear and convincing evidence the presence of actual fraud under § 548(a)(1) to render the transfer of $573,161.65 avoidable.

*7 4. Plaintiff abandoned its claims for breach of contract, unjust enrichment, civil conspiracy, turnover under 11 U.S.C. § 542, conversion and punitive damages. Given plaintiff's failure to discuss six of the seven claims asserted in its adversary complaint in its post-trial submission, this Court adopts the reasoning of the bankruptcy court and concludes that plaintiff cannot attempt to revoke its waiver or abandonment of these claims at this late stage in the proceeding. *See In re Kaplan,* 1995 WL 500599, at *13 n.8 (Bankr. E.D. Pa. Aug. 22, 1995) (since debtor failed to advance defenses listed in complaint by necessary proofs or legal argument, court considered them abandoned); *In re Cara Corp.,* 148 B.R. 760, 770 (Bankr. E.D. Pa. 1992) (court disposed of claims in complaint on the ground that "since they were not argued, they are waived.").

Accordingly, this Court will adopt the report and recommendation of the bankruptcy court to the extent discussed herein, and dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

An appropriate order will be entered.

### ORDER

AND NOW, this 8th day of September, 1997, upon consideration of Plaintiff's Objections to the Report and Recommendations of the Bankruptcy Court, Defendants' Response thereto, and Plaintiff's Appellate Brief, IT IS ORDERED that:

1. The Report and Recommendations of Bankruptcy Judge Scholl, dated February 12, 1997, are ADOPTED.

2. Judgment is entered in favor of the remaining Defendants and against the Plaintiff.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 7

Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

3. The only claim properly raised and not abandoned in the Debtor's Amended Complaint, arising under 11 U.S.C. § 548(a)(1), is DISMISSED.

E.D.Pa.,1997.
In re Laramie Associates, Ltd. v. General Syndicators of America
Not Reported in F.Supp., 1997 WL 587288 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:97cv03135 (Docket) (Apr. 30, 1997)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Westlaw.

Slip Copy                                                                 Page 1

Slip Copy, 2006 WL 1285032 (M.D.Ga.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Otero v. VitoM.D.Ga.,2006.Only the Westlaw
citation is currently available.
United States District Court,M.D. Georgia,Macon
Division.
Jay OTERO, Plaintiff,
v.
George VITO, D.P.M., Foot & Leg Centers of
Georgia, P.C., Surgical Centers of Georgia, P.C.,
and Middle Georgia Hospital, L.L.C., Defendants.
No. 5:04-CV-211 (DF).

May 10, 2006.

Mark Ashley Inman, Prescott L. Nottingham,
Atlanta, GA, for Plaintiff.
R. Lars Anderson, Macon, GA, Brynda Rodriguez
Insley, Chloe E. Dallaire, John K. Train, IV,
Deborah A. Ausburn, Weinberg, Wheeler, Hudgins,
Gunn & Dial, LLC, Laura Lynne Voght, Atlanta,
GA, for Defendants.

### ORDER
DUROSS FITZPATRICK, Judge.
*1 Before this Court is Defendant Middle Georgia
Hospital's Motion to Certify An Immediate Appeal
Pursuant to 28 U.S.C. § 1292(b) And To Stay
Proceedings (doc. 207). Defendant Middle Georgia
Hospital ("Hospital") seeks "an order granting
certification for an immediate appeal of this Court's
April 4, 2006 Order which, among other things,
granted Plaintiff's Motion for Partial Summary
Judgment on liability against MGH." (Def.'s Mot.
Certify, doc. 207, at 1.) For the reasons stated
below, the Hospital's motion is **DENIED.**

According to 28 U.S.C.A. § 1292(b), a district court
shall certify a non-final order for interlocutory
appeal when the order involves: (1) a controlling
question of law; (2) as to which there is substantial
ground for difference of opinion; and (3) an
immediate appeal from the order may materially

advance the ultimate termination of the litigation.
28 U.S.C.A. § 1292(b) (West 2005).

### 1. Controlling Question of Law

Proper certification of an order for interlocutory
appeal under § 1292(b) hinges upon "the distinction
between a question of law, which will satisfy §
1292(b), and 'a question of fact or matter for the
discretion of the trial court.' " *McFarlin v.
Conseco Services, LLC,* 381 F.3d 1251, 1258 (11th
Cir.2004) (quoting *Garner v. Wolfinbarger,* 430
F.2d 1093,1096-97 (5th Cir.1970)).[FN1] Under §
1292(b), "[t]he term 'question of law' does not
mean the application of settled law to fact." *Id.*
(citing *Ahrenholz v. Bd. of Trustees of the Univ. of
Ill.,* 219 F.3d 674, 676 (7th Cir.2000)). Rather,
Congress intended "question of law" under §
1292(b) to mean "an abstract legal issue or what
might be called one of 'pure' law, matters the court
of appeals 'can decide quickly and cleanly without
having to study the record.' " *McFarlin,* 381 F.3d
at 1258 (quoting *Ahrenholz,* 219 F.3d at 676). In
fact, "the antithesis of a proper § 1292(b) appeal is
one that turns on whether there is a genuine issue of
fact or whether the district court properly applied
settled law to the facts or evidence of a particular
case." *Id.* at 1259.

> FN1. In *Bonner v. City of Prichard,* 661
> F.2d 1206,1209 (11th Cir.1981) (en banc),
> the Eleventh Circuit adopted as precedent
> all Fifth Circuit decisions handed down
> before October 1, 1981.

On April 4, 2006, this Court granted Plaintiff Jay
Otero ("Otero") partial summary judgment, holding
that the Hospital's decision to credential Dr. Vito to
perform an illegal surgery on Otero was negligent
as a matter of law. (Order, doc. 205.) The Hospital
argues that the negligence-per-se issue is a "
controlling issue of law" because "[i]f this Court's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 2

Slip Copy, 2006 WL 1285032 (M.D.Ga.)
**(Cite as: Slip Copy)**

holding that MGH is liable based on this newly created theory of strict liability applied retroactively to MGH were found to be erroneous, it would be reversible error on appeal and would materially affect the outcome of this litigation." (Def.'s Mem. Supp. Mot. Certif., doc. 208, at 4-5.) Otero claims that there is no controlling issue of law present for two reasons. First, "[w]hile the Court's determination was a purely 'legal issue,' it does not control all aspects of this matter." (Pl.'s Br. Opp. Def.'s Mot. Certif., doc. 209, at 3-4.) Second, "[t]he Court applied settled law to find MGH liable." (Pl.'s Br. 4.)

*2 The negligence-per-se issue resolved by the Court in its April 4 Order is not a controlling question of law for purposes of § 1292(b). While a Georgia appellate court has yet to address this precise issue, there is a sufficient body of case and statutory law on the subject, which the Court carefully reviewed before rendering its decision. Yet, the Hospital claims that the Court's decision " effectively established a new form of retroactive strict liability for negligent credentialing." (Def.'s Mem. 2.) The Court disagrees. The Hospital is liable in this case because they credentialed a podiatrist to perform a surgery that he was not legally authorized to perform-a surgery that the Georgia Court of Appeals determined to be clearly prohibited by terms of the Georgia Podiatry Act. *See Vito v. Dhillon,* 605 S.E.2d 602, 605 (Ga.Ct.App.2004). Therefore, because the Court's decision was based on settled statutory and case law, and did not establish a new cause of action, the Court hereby finds that the controlling-question requirement has not been met.

Notwithstanding the Court's foregoing determination, certification would still be improper in this case because the Hospital is unable to meet the final requirement for certification under § 1292(b).

**2. Material Advancement**

The Hospital contends that appellate review of the April 4 Order "now, as opposed to after submission of evidence concerning damages to a jury and painstaking examination of that evidence, will greatly benefit the parties and this Court." (Def.'s Mem.10.) Otero submits that, in light of the numerous claims he has pending against the Hospital and the other defendants, certification would "only unnecessarily expand the litigation...." (Pl.'s Br. 4, 6.)

Section 1292(b) requires a district court to find that resolution of a "controlling question of law ... may materially advance the ultimate termination of the litigation." *McFarlin,* 381 F.3d at 1259. "This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *Id.* (citing *In re Va. Elec. & Power Co.,* 539 F.2d 357, 364 (4th Cir.1976) ( Section 1292(b) appeal appropriate when resolution of controlling question could prevent substantial delay)).

Even if the Court assumes that there is a controlling question of law in this case, an immediate appeal will not materially advance the ultimate termination of the case, nor will it promote judicial economy. The Court is aware that there is a possibility that the April 4 Order could be reversed on appeal following a "full trial on the issue of damages, with multiple experts and fact witnesses," and that the parties then would "have to re-try the entire case on liability and damages." (Def.'s Mem. 9, 10.) The Court also knows, however, that Otero's negligent-credentialing claim against the Hospital is only one of several claims he has alleged, and the Hospital is only one of a number of defendants involved in this litigation. As such, the Court is quite certain that certifying the negligent-credentialing issue under § 1292(b) would not serve to avoid a trial, and would not otherwise substantially shorten the litigation.

*3 Accordingly, Defendant Middle Georgia Hospital's Motion to Certify an Immediate Appeal Pursuant to 28 U.S.C. § 1292(b) And To Stay Proceedings (doc. 207) is hereby **DENIED.**

SO ORDERED, this 10th day of May, 2006.

M.D.Ga.,2006.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 3

Slip Copy, 2006 WL 1285032 (M.D.Ga.)
**(Cite as: Slip Copy)**

Otero v. Vito
Slip Copy, 2006 WL 1285032 (M.D.Ga.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1864725 (Trial Motion, Memorandum and Affidavit) Defendant Middle Georgia Hospital, LLC's Reply Memorandum of Law in Support of its Motion to Certify an Immediate Appeal Pursuant to 28 U.S.C. 1292(b) and to Stay Proceedings (May 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1491991 (Trial Motion, Memorandum and Affidavit) Defendant Middle Georgia Hospital, LLC's Memorandum of Law in Support of its Motion to Certify an Immediate Appeal Pursuant to 28 U.S.C. 1292(b) and to Stay Proceedings (Apr. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 1184061 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendant Middle Georgia Hospital, LLC's Motion for Summary Judgment (Mar. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 1184062 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendant Middle Georgia Hospital, LLC's Motion for Summary Judgment (Mar. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 1184059 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response Brief to Defendant Middle Georgia Hospital LLC's Motion for Permission to File Surreply Brief in Opposition to Plaintiff's Motion for Summary Judgment (Mar. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 1184058 (Trial Motion, Memorandum and Affidavit) Reply in Support of Defendant Middle Georgia Hospital, LLC's Motion to Exclude the Testimony of Dror Paley, M.D., Frederick C. Flandry, M.D. and Arthur S. Shorr (Mar. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 825098 (Trial Motion, Memorandum and Affidavit) Defendant Middle Georgia Hospital, LLC's Motion for Reconsideration of Summary Judgment and Brief in Support Thereof (Feb. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 825097 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Middle Georgia Hospital LLC's Rule 56(f) Motion and Motion to Exclude Testimony of Plaintiff's Experts (Feb. 23, 2006) Original Image of this Document

(PDF)
• 2006 WL 825096 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Middle Georgia Hospital, LLC's Motion to Exclude the Testimony of Dror Paley, M.D., Frederick C. Flandry, M.D. and Arthur S. Shorr (Feb. 13, 2006) Original Image of this Document (PDF)
• 2006 WL 825094 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Opposition to Middle Georgia Hospital's Motion for Summary Judgment (Feb. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 508201 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief in Support of his Motion for Summary Judgment as to Unlawful Practice of Medicne and Battery of Vito Defendants (Jan. 23, 2006) Original Image of this Document (PDF)
• 2006 WL 508200 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition Brief in Response to Motions to Quash Filed by Non-Party Hospitals and Defendants Vito and Foot & Leg Centers of Georgia, P.C. (Jan. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 508199 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Middle Georgia Hospital, L.L.C's Motion to Quash (Jan. 11, 2006) Original Image of this Document (PDF)
• 2006 WL 508197 (Trial Motion, Memorandum and Affidavit) Defendant Middle Georgia Hospital, LLC's Brief in Opposition to Plaintiff's Motion for Summary Judgment as to Defendant Vito (Jan. 9, 2006) Original Image of this Document (PDF)
• 2006 WL 508198 (Trial Motion, Memorandum and Affidavit) Defendant Vito's Brief in Response to Plaintiff's Motion for Summary Judgment as to Defendant Vito for Battery and the Unauthorized Practice of Medicine (Jan. 9, 2006) Original Image of this Document (PDF)
• 2005 WL 2912791 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief in Support of his Motion for Summary Judgment (Oct. 3, 2005) Original Image of this Document (PDF)
• 2005 WL 2912790 (Trial Motion, Memorandum and Affidavit) Defendant Middle Georgia Hospital, Llc's Brief in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4

Slip Copy, 2006 WL 1285032 (M.D.Ga.)
**(Cite as: Slip Copy)**

Cross-Motion for Summary Judgment (Sep. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 3973890 () Affidavit of Dror Paley, M.D. (May 5, 2005)
• 2004 WL 3025939 (Trial Motion, Memorandum and Affidavit) Response to Defendants' Motion to Reconsider Or, in the Alternative, to Amend Order (Nov. 11, 2004) Original Image of this Document (PDF)
• 2004 WL 3026229 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Response to Defendants' Objection and Citation of Authority to Plaintiff's Filing of Briefs Submitted to the Georgia Court of Appeals (Sep. 25, 2004) Original Image of this Document (PDF)
• 2004 WL 3026226 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Response to Plaintiff's Motion for Summary Judgment as to Defendants George Vito. D.P.M. and Foot & Leg Centers. Georgia. P.C.'s Negligence per Se (Sep. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3026221 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Objection and Citation of Authority to Plaintiff's Filing of Briefs Submitted to the Georgia Court of Appeals (Sep. 9, 2004) Original Image of this Document (PDF)
• 2004 WL 3026143 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiff's Opposition Brief to Defendants' Motion to Strike (Aug. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 3026209 (Trial Motion, Memorandum and Affidavit) Opposition Brief to Defendants' Motion to Strike (Aug. 12, 2004) Original Image of this Document (PDF)
• 2004 WL 3026212 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Support of Motion for Summary Judgment as to Defendants George Vito, D.P.M. and Foot and Leg Centers of Georgia. P.C.'s Negligence per Se (Aug. 12, 2004) Original Image of this Document (PDF)
• 2004 WL 3026204 (Trial Pleading) Answer of Defendant Middle Georgia Hospital, L.L.C. to Plaintiff's Complaint (Aug. 3, 2004) Original Image of this Document (PDF)
• 2004 WL 3026195 (Trial Pleading) Answer and Affirmative Defenses of Surgical Centers of Georgia, P.C. (Aug. 2, 2004) Original Image of this Document (PDF)
• 2004 WL 3026200 (Trial Pleading) Answer of

Defendants, George Vito, D.P.M. and Foot & Leg Centers of Georgia, P.C. (Aug. 2, 2004) Original Image of this Document (PDF)
• 2004 WL 3026138 (Trial Pleading) Complaint for Damages and Demand for Jury Trial (Jul. 7, 2004) Original Image of this Document (PDF)
• 5:04cv00211 (Docket) (Jul. 7, 2004)
• 2004 WL 3026148 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Brief (2004) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1997 WL 611674 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
F.D.I.C. v. Parkway Executive Office
CenterE.D.Pa.,1997.Only the Westlaw citation is
currently available.
United States District Court, E.D. Pennsylvania.
FEDERAL DEPOSIT INSURANCE
CORPORATION Statutory Successor to Resolution
Trust Corporation In Its Capacity As Receiver For
Atlantic Financial Savings, F.A.
v.
PARKWAY EXECUTIVE OFFICE CENTER
Federal Deposit Insurance Corporation Statutory
Successor to Resolution Trust Corporation In Its
Capacity As Receiver For Atlantic Financial
Savings, F.A.
v.
Richard L. Evans and Helene Evans
**Nos. Civ.A. 96-121, Civ.A. 96-122.**

Sept. 24, 1997.

Miles H. Shore, Saul, Ewing, Remick & Saul, Phila,
PA, for Federal Deposit Insurance Corporation,
Statutory Successor to Resolution Trust
Corporation Inits Capacity as Receiver for Atlantic
Financial Savings, F.A., plaintiff.
Miles H. Shore, Saul, Ewing, Remick & Saul, Phila,
PA, Jeffrey A. Less, Bazelon & Less, Phila, PA, for
Parkway Executive Office Center, a Pennsylvania
General Partnership, defendant.
Miles H. Shore, Saul, Ewing, Remick & Saul, Phila,
PA, for Federal Deposit Insurance Corporation,
Statutory Successor to Resolution Trust
Corporation in its Capacity as Receiver for Atlantic
Financial Savings, F.A., plaintiff.
Miles H. Shore, Saul, Ewing, Remick & Saul, Phila,
PA, Jeffrey A. Less, Bazelon & Less, Phila, PA, for
Richard L. Evans, defendant.
Miles H. Shore, Jeffrey A. Less, (See above), for
Helene Evans, defendant.
Jeffrey A. Less, Bazelon & Less, Phila, PA, for
Parkway Executive Office Center, movant.

**MEMORANDUM**
PADOVA, J.
*1 On September 2, 1997, Defendants filed a
Motion for Partial Reconsideration or in the
alternative for Certification of Interlocutory Appeal,
pursuant to Federal Rule of Civil Procedure 59(e)
and 28 U.S.C.A. § 1292(b) (West 1993),
respectively. Defendants seek reconsideration of
the Court's Opinion and Order entered on August
18, 1997, insofar as it granted Plaintiff FDIC's
Motion for Summary Judgment with regard to
Defendants' statute of limitations defense. In the
alternative, Defendants request that the Court
certify the statute of limitations question for
interlocutory appeal. For the following reasons, I
will deny the Motion.

**I. Motion for Reconsideration**

Defendants' Motion contains two arguments.

First, Defendants cite *Cadle Co. v. 1007 Joint
Venture,* 82 F.3d 102 (5th Cir.1996), in support of
their primary argument that the six-year limitations
period contained in the Financial Institutions
Reform, Recovery, and Enforcement Act of 1989,
12 U.S.C .A. § . 1821(d)(14)(A) (West 1989) ("
FIRREA") should not apply in this case. Although
*Cadle Co.* was not referred to in the Court's Opinion
partially granting Plaintiff's Summary Judgment
Motion, I did consider the arguments therein and
concluded the following: *Cadle Co.* involved a
claim made by an *assignee* of the FDIC. At the time
of assignment, the cause of action had not yet
accrued. Indeed, the assignee held a performing
note. Therefore, the court in *Cadle Co.* found that
the shorter state law statute of limitations applied.
However, in the instant case, the claimant *is* the
FDIC. FIRREA clearly and unambiguously
provides the FDIC, as a governmental agency, with
the longer of a six-year period from the date of
accrual of the claim, or the applicable period under
state law. 12 U.S.C.A. § 1821(d)(14)(A), (B).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1997 WL 611674 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Since FIRREA is clear on its face, I need not look beyond the language of the statute to reject the *Cadle Co.* rationale as such.

Second, Defendants argue that even if the six-year statute of limitations applies, the FDIC's claims were filed one day late because one of the six years was a leap year. I am precluded from acting on this argument. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985) (citations omitted), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). A motion for reconsideration is not an opportunity for a party to present previously available evidence or new arguments. *See Corrigan v. Methodist Hospital,* 885 F.Supp. 127, 127 (E.D.Pa.1995). As such, I will not act on Defendants' "leap year" argument, presented here for the first time.

Although I need not reach Defendants' leap-year argument, I do state that Defendants' position is untenable. FIRREA provides for a "six year period " of limitation. 12 U.S.C.A. § 1821(d)(14)(A). Of necessity, any six-year period will include a leap-year. Congress' silence as to the definition of a year in this context only supports the Court's view that by choosing six-years and not 2,190 days as the period of limitation, Congress intended to provide a naturally-occurring six-year period, one that must include a leap year.

**\*2** Defendants posit that under Pennsylvania law, a " year" means a "calendar year." 1 Pa.C.S.A. § 1991 (Purdon 1995). However, the same statutory section continues, "unless the context clearly indicates otherwise." *Id.* I believe that "Congress clearly indicated otherwise" when it decided to provide governmental agencies a "six-year period," rather than a specific number of days, to commence a lawsuit. Similarly, under Pennsylvania law, when the legislature uses the phrase "a period of [] years" they "clearly intended to mean a quantity of time, i.e., 24 calendar months running from anniversary to anniversary." *See Fox Chapel Area School*

*District v. Dunlap,* 53 Pa.Cmwlth. 479, 417 A.2d 1329, 1330 (Cmwlth.Ct.Pa.1980); *see also LaRosa v. Cove Haven, Inc.,* 840 F.Supp. 319, 321 (M.D.Pa.1993) (finding that "[a] year is a period consisting of either three hundred sixty-five (365) days, in the common sense, but also three hundred sixty-six (366) days when that same statutory period includes a leap year").

## II. Certification of Interlocutory Appeal

In the alternative, Defendants request that I certify the statute of limitations question for interlocutory appeal pursuant to 28 U.S.C.A. § 1292(b). I shall deny the Defendants' alternative request.

28 U.S.C.A. § 1292(b) provides that in order for a district court to permit a party to seek an immediate appeal of an interlocutory order, the order must " involve[ ] a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation ..." 28 U.S.C.A. § 1292(b). The trial court has discretion in the certification decision; however, certification is appropriate only in " exceptional" circumstances. *See Piazza v. Major League Baseball,* 836 F.Supp. 269, 270 (E.D.Pa.1992). The party seeking certification has the burden of showing that "exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment." *See Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1112 (E.D.Pa.1992); *see also Link v. Mercedes-Benz of N. Am.,* 550 F.2d 860, 863 (3d Cir.1977) ("We cannot sanction an erosion of the prohibition against piecemeal appellate review.")

The United States Court of Appeals for the Third Circuit instructs that before an order can be certified for interlocutory appeal, all three factors identified in 28 U.S.C.A. § 1292(b) must be satisfied. *See Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974) (finding that "the district judge must certify that the order satisfies the three criteria"). The statute's three requirements are as follows: (1)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 3

Not Reported in F.Supp., 1997 WL 611674 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

the order from which the appeal is taken must involve a controlling question of law; (2) there must be substantial grounds for a difference of opinion concerning the issue; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See Orson Inc. v. Miramax Film Corporation,* 867 F.Supp. 319 (E.D.Pa.1994) (citation omitted).

### A. Controlling Question of Law

**\*3** In the Third Circuit, a controlling issue of law is one that "would result in a reversal of a judgment after final hearing." *Piazza,* 836 F.Supp. at 270 (citing *Katz,* 496 F.2d at 755). To determine if an issue presents a "controlling question of law," the critical focus is on whether a different resolution of the issue would eliminate the need for trial. *See Giansante v. Allan Kanner & Associates, P.C.,* No. 94-1770, 1994 WL 630209, at \*2 (E.D.Pa. Nov.3, 1994) (citing *Katz,* 496 F.2d at 755). In this case, the granting of the Motion for Summary Judgment as to the statute of limitations defense is not dispositive. The availability of the defense does not affect the triability of the case and contrary resolution of the issue would not result in a "reversal of judgment after final hearing."

### B. Substantial Grounds for Difference of Opinion

There has been no showing of conflicting precedent on the applicability of FIRREA's six year limitations period. As discussed above, FIRREA clearly and unambiguously provides the FDIC, as a governmental agency, with the longer of a six-year period from the date of accrual of the claim, or the applicable period under state law. 12 U.S.C.A. § 1821(d)(14)(A), (B). Defendants have not put forth any precedent to the contrary. Therefore, I find that there is no substantial ground for a difference of opinion.

### C. Materially Advance the Ultimate Termination of the Litigation

After reviewing the issues involved in the litigation,

I find that an immediate appeal will only delay the ultimate termination of this litigation. Discovery in this case is complete. The trial is scheduled for November 25, 1997. "Where discovery is complete and the case is ready for trial an interlocutory appeal can hardly advance the ultimate termination of the litigation." *See Rottmund,* 813 F.Supp. at 1112 (citing *Caldwell v. Seaboard Coastline Railroad,* 435 F.Supp. 310, 312 (W.D.N.C.1977)).

For the foregoing reasons, I will deny the Motion for Partial Reconsideration or in the alternative for Certification of Interlocutory Appeal.

An appropriate Order follows.

### ORDER

**AND NOW,** this 22nd day of September, 1997, upon consideration of Defendants' Motion for Partial Reconsideration or in the alternative for Certification of Interlocutory Appeal, pursuant to Federal Rule of Civil Procedure 59(e) and 28 U.S.C.A. § 1292(b) respectively, (Doc. No. 38) and Plaintiff's Response thereto, (Doc. No 40) it is **HEREBY ORDERED** that the Motion is **DENIED.**

BY THE COURT

E.D.Pa.,1997.
F.D.I.C. v. Parkway Executive Office Center
Not Reported in F.Supp., 1997 WL 611674 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:96cv00121 (Docket) (Jan. 10, 1996)
• 2:96cv00122 (Docket) (Jan. 10, 1996)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**H**
In re Edison Bros. Stores, Inc.D.Del.,1996.Only the
Westlaw citation is currently available.
United States District Court, D. Delaware.
In re EDISON BROTHERS STORES, INC., et al.,
Debtors.
Jonathan VICTOR, Richard Polak, and Martin
Katz, Appellants,
v.
EDISON BROTHERS STORES, INC., et al.,
Appellees.
No. CIV.A. 96-177-SLR.

June 27, 1996.

Laura Davis Jones, and Joel A. Waite, of Young,
Conaway, Stargatt & Taylor, Wilmington,
Delaware; and Harvey R. Miller, and Richard P.
Krasnow, of Weil, Gotshal & Manges LLP, New
York, New York, and D.J. Baker, of Weil, Gotshal
& Manges LLP, Houston, Texas, for
appellees/debtors.
Jeffrey C. Wisler, of Williams, Hershman & Wisler,
of Wilmington, Delaware, and Peter D. Wolfson,
Carole Neville, John A. Bicks, and Pamela Cohen,
of Pryor, Cashman, Sherman & Flynn, New York,
New York, for appellants.
Thomas L. Ambro, and Deborah E. Spivack, of
Richards, Layton & Finger, Wilmington, Delaware,
and David S. Kurtz, Timothy R. Pohl, and Sean D.
Malloy, of Jones, Day, Reavis & Pogue, Chicago,
Illinois, for the Official Committee of Unsecured
Creditors of Edison Brothers Stores, Inc.
E. Gordon Robinson, and Susan R. Sherrill, of U.S.
Securities and Exchange Commission, Atlanta
Georgia, and Ellen W. Slights, Assistant United
States Attorney, Wilmington, Delaware, for U.S.
Securities and Exchange Commission.

*MEMORANDUM OPINION*
SUE L. ROBINSON, District Judge

I. INTRODUCTION AND BACKGROUND

*1 Pending before the court is a motion filed by
appellee, the Official Committee of Unsecured
Creditors (hereinafter the "Creditors' Committee"),
for an order dismissing the appeal of Joseph
Harrosh, Jonathan Victor, Richard Polak and
Martin Katz (hereinafter the "appellants"), all of
whom are non-insider public shareholders of Edison
Brothers Stores, Inc. and 65 subsidiaries
(hereinafter the "debtors") which filed chapter 11
petitions in this district's bankruptcy court in
November 1995.[FN1] By letters dated November 9
and November 22, 1995, appellants wrote to the
United States Trustee requesting that an official
equity committee be appointed pursuant to 11
U.S.C. § 1102(a).[FN2] On December 7, 1995, the
United States Trustee declined appellants' request.

> FN1. As of the Petition Date,
> approximately 22,000,000 shares of the
> debtors' common stock were outstanding.
> Those shares are widely held by more than
> 4,000 record holders, and a substantially
> larger number of beneficial holders.

> FN2. Section 1102(a) of the Bankruptcy
> Code provides in relevant part that:
> (1) As soon as practicable after the order
> for relief under chapter 11 of this title, the
> United States trustee shall appoint a
> committee of creditors holding unsecured
> claims and may appoint additional
> committees of creditors or of equity
> security holders as the United States
> trustee deems appropriate.
> (2) On request of a party in interest, the
> court may order the appointment of
> additional committees of creditors or of
> equity security holders if necessary to
> assure adequate representation of creditors
> or of equity security holders. The United
> States trustee shall appoint any such
> committee.
> (Emphasis added)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
(Cite as: Not Reported in F.Supp.)

On January 12, 1996, appellants filed a motion with the bankruptcy court requesting the appointment of an official committee of equity security holders. The California Public Employees Retirement System (holding approximately 150,000 shares of the debtors' common stock) and the Securities and Exchange Commission ("SEC") supported the motion. The debtors, the United States Trustee and the Creditors' Committee opposed the motion.

Hearings on the motion were held by the bankruptcy court on February 29 and March 20, 1996. Appellants asserted to the court that (1) the debtors were not insolvent, (2) the debtors' public shares were widely held, (3) the debtors' chapter 11 cases were complex, and (4) insiders of the debtors could not adequately represent the interest of public shareholders in the chapter 11 cases for conflict of interest reasons. The opponents to the motion argued that the debtors' current and former management could and would provide adequate representation for the debtors' public shareholders, as a result of their ownership of approximately 35% of the debtors' outstanding common shares. The bankruptcy court declined to appoint an equity committee, stating during the course of the hearing the following, *inter alia:*
* "I'm going to deny without prejudice obviously, because as this case progresses I think there may be an appropriate time for a committee of equity holders...."
* "[I]f somebody wants to come on with evidence to suggest that [the interests of insider shareholders are not aligned with those of non-insider shareholders,] I'd be glad to entertain it...."
* [I]f the petitioning shareholders reach a point where they think that additional facts need to be brought to my attention which would warrant a change of my position, then I would urge them to do so...."
* "I think that based upon a different posture six months from now [the request to appoint an equity committee] may be an appropriate application...."

(D.I. 16, # 15 at 101, 103, 114, 114-115, respectively)

Appellants thereafter filed a timely appeal to this court. In response to the appeal, the Creditors'

Committee filed the pending motion to dismiss the appeal for want of subject matter jurisdiction.

## II. DISCUSSION

*2 As with many bankruptcy cases, it is a difficult task in the case at bar to divine legal principles when dealing with an equitable process revolving around a discretionary matter. Clearly the establishment of an official equity committee pursuant to 11 U.S.C. § 1102(a) is a discretionary matter, the resolution of which is fact-driven and, therefore, not amenable to any bright line tests.
And while the bankruptcy court in this case has expressed its willingness to revisit its order if facts warrant, the court has conclusively determined that, on the present record, the appointment of an equity committee is not necessary to assure adequate representation of non-insider equity security holders.

To establish that review of the bankruptcy court's decision is appropriate at the present time, appellants must show that the decision is either a final order, an interlocutory order appealable under 28 U.S.C. § 158(a)(3), or a collateral order.

### A. Final Orders

This court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1). Finality is viewed flexibly in the bankruptcy context. *See, e.g., In re Trans World Airlines, Inc.,* 182 B.R. 102, 105 (D.Del.1995) ("In bankruptcy cases, the courts accord finality a somewhat 'flexible pragmatic definition' ") (*citing In re Columbia Gas System, Inc.,* 146 B.R. 106, 110 (D.Del.1992), *aff'd,* 50 F.3d 233 (3d Cir.1995)); *In re Columbia Gas System, Inc.,* 182 B.R. 397 (D.Del.1995); *In re Buckhead America Corp.,* 180 B.R. 83, 84 (D.Del.1995).
The Third Circuit has explained the rationale for viewing finality under a less rigorous standard in the bankruptcy area as follows:
Bankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 3

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.

*In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir.1985). In the Third Circuit, courts typically look to a number of factors to determine if an order is a final order: 1) the impact of the bankruptcy court's order upon the assets of the bankruptcy estate; 2) the necessity for further fact-finding on remand to the bankruptcy court; 3) the preclusive effect of the district court's decision on the merits of subsequent litigation; and 4) the furtherance of judicial economy. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 920 F.2d 1127, 1131 (3d Cir.1990).

Appellants do not offer specific arguments that the factors identified in *Allegheny* weigh in favor of finding finality under the circumstances at bar. Instead, appellants essentially argue the merits of the dispute, i.e., finality should be found (and the order reversed) so that "the debtors' thousands of public shareholders [will not be excluded] from effective participation in the reorganization process including the restructuring of the debtors' business operations, the formulation of the business plan, and the negotiation of a plan of reorganization." (D.I. 15 at 8) With none of the factors even arguably applying, however, and with the only case law directly on point holding contrary to appellants' position,[FN3] the court concludes that the order in dispute is not final for purposes of an appeal of right pursuant to 28 U.S.C. § 158(a)(1).

> FN3. The United States Court of Appeals for the Second Circuit held in *In re Johns-Manville Corp.,* 824 F.2d 176, 179-180 (2d Cir.1987) that "[o]rders denying shareholder requests for official committee status" are not final for purposes of appeal because they "do not resolve particular disputes within the overall bankruptcy case; they simply affect the committee structure within which various disputes in the reorganization proceeding will be considered."

### B. Interlocutory Orders

**\*3** Section 158(a)(3) of Title 28 of the United States Code gives this court jurisdiction to hear appeals, with leave of court, from interlocutory orders and decrees. In deciding whether an interlocutory order is appealable in the bankruptcy context, courts have typically borrowed the standard found in 28 U.S.C. § 1292(b), which governs whether an appeal of an interlocutory order of a district court to a court of appeals is warranted. *In re Delaware and Hudson Ry. Co.,* 96 B.R. 469, 472-73 (D.Del.), *aff'd,* 884 F.2d 1383 (3d Cir.1989). Although the concept of finality is accorded some measure of flexibility in the context of § 158(a)(1) appeals, apparently the same standard does not apply in the context of § 158(a)(3) interlocutory appeals. Thus, an appellant must establish that " exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id.* at 473. Also, under § 1292(b), an interlocutory appeal will be granted only when the order at issue (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion and (3) when an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.*

The court declines to characterize the dispute at bar as presenting "exceptional circumstances" warranting leave to appeal under § 158(a)(3). Although one might arguably characterize the issue of when it is appropriate to establish an official equity committee as a "controlling question of law," nevertheless the court is not convinced that an immediate appeal in this case will materially advance the ultimate termination of the litigation (as opposed to materially advancing the rights of appellants, as they argue).

### C. Collateral Orders

The final basis for appellate jurisdiction is the collateral order doctrine. In general, the collateral order doctrine applies to the class of prejudgment orders which "finally determine claims of right separable from, and collateral to, rights asserted in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 4

Not Reported in F.Supp., 1996 WL 363806 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 430 (1985) (*quoting Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546 (1949)). For the collateral order doctrine to apply, an order must satisfy three conditions: 1) it must " conclusively determine the disputed question;" FN4 2) it must "resolve an important issue completely separate from the merits of the action;" and 3) it must "be effectively unreviewable on appeal from a final judgment." *Richardson-Merrell,* 472 U.S. at 431.

> FN4. Both in their opening and reply briefs, the Creditors' Committee focuses solely on this first condition that must be satisfied if the collateral order doctrine is to apply. The court nevertheless has reviewed the other two conditions.

As noted above, the bankruptcy court has conclusively determined that, under the facts of record, it is not necessary to appoint an official equity committee to assure adequate representation in the reorganization process to non-insider equity shareholders.FN5 The issue of whether non-insider public shareholders are adequately represented in the reorganization process is an important issue (as attested to by the interest in these proceedings by the Securities and Exchange Commission) completely separate from the merits of the reorganization. Finally, all parties to this dispute have acknowledged that, at some point in the proceedings, the opportunity to effectively participate in the reorganization will be lost, thereby mooting the question of official committee status. To decline review of this kind of order in the reorganization context will most certainly engage the court and the parties in a guessing game of when such an issue has been developed enough for review without being mooted by the passage of time.

> FN5. The use of the "without prejudice" language is not persuasive in this context, since a change of facts is generally

grounds for revisiting a matter.

### III. CONCLUSION

**\*4** Although the court is cognizant of the long-standing Congressional policy against piecemeal appeals which underlies the final judgment rule, the court is satisfied that the issue of whether an equity committee should be appointed under the facts of record has been determined in such a fashion that appellate review is warranted under the collateral order doctrine without waiting for any further factual development. Therefore, the motion to dismiss filed by the Creditors' Committee is denied.

An order shall issue.

D.Del.,1996.
In re Edison Bros. Stores, Inc.
Not Reported in F.Supp., 1996 WL 363806 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.